Ruth Reede, Plaintiff-Appellee, v. Judith Treat, Defendant-Appellant.

Gen. No. 10,555.

Fourth District.

August 24, 1965.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (John M. Moelmann, of counsel), and Durward G. Judy, Esq., of Champaign, for appellant.

Franklin, Flynn & Palmer, of Champaign, for appellee.

TRAPP, J.

This is an appeal by the defendant, Judith Treat, from a judgment entered against her in the Circuit Court of Champaign, Illinois, in the amount of $11,000.

Defendant alleged, as a defense to plaintiff's complaint for personal injury, a release executed by the plaintiff. The reply of the plaintiff pleaded that the

release was executed under a mutual mistake as to the nature and extent of plaintiff's injuries and upon a grossly inadequate consideration.

The trial court, hearing evidence as in equity, determined that the release was void by reason of mutual mistake of the parties in the execution thereof, that there was no negligence on the part of the plaintiff in failing to discover the scope and extent of her injuries, and that the consideration was inadequate. Thereafter, the case proceeded as in law, a jury being impanelled and evidence heard. At the close of plaintiff's evidence, defendant's motion for a directed verdict was denied. At the close of all of the evidence, defendant's motion for a directed verdict was denied and the court granted plaintiff's motion for a directed verdict. The jury, thereupon, assessed the damages.

The defendant's theory is that the court erred in setting aside the release, and her post-trial motion was directed solely to that issue.

The facts of the accident and the history of the plaintiff's condition require careful examination in order to determine whether the trial court erred in setting aside the release.

Plaintiff's automobile was stopped for a stop light at the time of the accident, about 10:00 o'clock p. m., March 24, 1961. The defendant's car, unlighted, came up from behind plaintiff's car, with no apparent attempt to slow or stop, and struck plaintiff's car in the rear. Plaintiff realizing, at the last moment, that defendant's car was not going to stop, braced herself for the blow. The impact snapped her neck, threw a package of cigarettes against the windshield in such a manner that it bounced back and hit her face below the eye leaving a bruise. Plaintiff was dazed. Substantial damage was done to the grillwork and headlight on the defendant's car.

Plaintiff was taken to the hospital and x-rayed from the waist up. Dr. Adkins gave plaintiff a prescription for pain, apparently localized in her neck between her shoulders and described as being like a cramp or muscle spasm.

Plaintiff returned to work the next day and the pain subsided within a few days. She states that by the last of April she had no pain at all.

On May 10, 1961, plaintiff signed the release for $125. At this time she had had no pain for a few weeks, and she had called Dr. Adkins who advised her that he found no dislocation from the x-rays. He also gave her his opinion that she would be all right.

Plaintiff had no recurrence of symptoms until July 1961, at which time the muscle spasms, cramps and stiff neck recurred, this time accompanied by a numb feeling in the hand. The condition grew worse and the symptoms occurred with greater frequency. On the last day she worked, September 10, 1961, plaintiff could not straighten her neck.

Plaintiff again conferred with Dr. Adkins in September. He gave her an injection and suggested hospitalization which she had for eight days. On the fifth day of hospitalization, Dr. Adkins called Dr. Walter Petersen for consultation. Again x-rays were taken from the waist up. The x-rays were again negative and the doctor recommended a cervical collar. On October 19, 1961, plaintiff again inquired of Dr. Petersen what could be done with her neck. A myelogram examination was made of her neck. This disclosed a defect between the sixth and seventh cervical vertebrae. Being still somewhat uncertain, the doctors confirmed the condition with a discogram on November 8, 1961. This is done by injecting the discs with long needles put in from the front of the neck.

Dr. Petersen testified that normal x-rays would not disclose the condition since it takes a special technique with contrast media to make a ruptured disc show up. These procedures were beyond plaintiff's financial means and assistance was first obtained from the Division of Vocational Rehabilitation.

Following the diagnosis Dr. Petersen did a disc removal and a fusion of the joint between the sixth and seventh cervical vertebrae with a bone graft from the patient's hip. The operative procedure was done from the front of the patient's neck by moving aside the large vessels and breathing and swallowing tubes. Following the operation plaintiff was kept in a four-poster type neck brace to effect the fusion, and thereafter was given therapy. Dr. Petersen saw her monthly until May of 1962, and thereafter less frequently. Plaintiff's general condition is that she has not felt strong and well enough to work and continued therapy is indicated.

Dr. Petersen gave his opinion based upon the history of the situation as stated to him that there was a causal connection between the trauma which occurred to plaintiff's neck in March of 1961 and the condition which he found in September of 1961. He did also state, as defendant claims, that there could be a connection with a lower back condition for which he operated on plaintiff in 1959, but he was of the opinion that the former condition had sufficiently resolved itself that the connection was unlikely.

The adjuster, who was described as polite and not overbearing, stated that he believed what Mrs. Reede, the plaintiff, told him. He didn't consider the injury serious. He did not obtain a medical report.

Defendant's contentions are: (1) that plaintiff has failed to prove by clear and convincing evidence that the release was secured as a result of a mistake; (2) that the mistake, if any, was a unilateral mistake; and

124

(3) that where an injury is known the failure to know all of the consequences is not a mistake of fact which will justify setting aside a release.

The defendant also contends that the release executed by the plaintiff, an adult person under no legal disability, included language:

"that in determining said sum there has been taken into consideration not only the ascertained injuries, disabilities and damages but also the possibility that the injuries sustained may be permanent and progressive and recovery therefrom uncertain and indefinite, so that consequences not now anticipated may result from the said accident.",

and urges that such contractual language clearly anticipated the possibility that there might have been unknown consequences of the known injuries, and that such language should not be disregarded.

Defendant also contends that the policy of the law is to favor compromise and settlement of personal injury claims, citing the language of Thomas v. Hollowell, 20 Ill App2d 288 at p 291, 155 NE2d 827:

"It has always been the policy of the law to favor compromise and settlement, and it is especially important to sustain that principle in this age of voluminous litigation, particularly in traffic cases. It must be remembered that the question of liability, besides the extent of the injuries, may well be in the minds of the parties. If a release, completely effective in the form in which it is executed, is to be lightly disregarded, then the peaceful settlement of claims out of court becomes practically impossible."

Such policy includes, as a significant factor, the question of liability in the minds of the parties at the

125

time of the settlement. In the consideration of this case, it is apparent that the issue of liability is not a significant factor. The court directed a verdict for the plaintiff and such action of the court was not questioned on post-trial motion.

The policy of the courts of this State with regard to the setting aside of releases for personal injuries may be traced through several cases. It was, perhaps, for the first time that the court, in 1925, in Munnis v. Northern Hotel Co., 237 Ill App 50, acted to set aside such a release. The plaintiff, injured in an elevator accident, signed a release for $300 on the day following the injury, after being advised by the doctor and the defendant's agent that there were no fractures and that he, the plaintiff, was coming along nicely. While there were other aspects in the case, the court held that the plaintiff, through the advice of the doctor and agent, was innocently mistaken as to the material fact, that such a mistake was mutual and that the release should be set aside as no injustice would be done.

In Fraser v. Glass, 311 Ill App 336, 35 NE2d 953, the plaintiff suffered injuries to her leg which was bruised and cut to the bone at the knee. During treatment and before the time of settlement, the doctor advised the plaintiff that the injury would be minor. Consideration for the release was an amount for damages to the car, plaintiff's doctor bill and $33 for loss of time. At this time the plaintiff was still in pain and her leg was still swollen. Subsequently, blood clots developed, there was infection and treatment was necessarily continued for many weeks. In holding that there was, in fact, a mutual mistake as to the nature and extent of the injury, at p 342 the court quoted Scheer v. Rockne Motors Corp., 68 F2d 942:

> "There is indeed no absolute line to be drawn between mistakes as to future, and as to present

126

facts. To tell a layman who has been injured that he will be about again in a short time is to do more than prophesy about his recovery. No doubt it is a forecast, but it is ordinarily more than a forecast; it is an assurance as to his present condition, and so understood."

In Clancy v. Pacenti, 15 Ill App2d 171, 145 NE2d 802, defendant's car struck the rear of the car behind plaintiff, which pushed plaintiff's car into the car ahead of it. Plaintiff was thrown against the dashboard, but she did not appear to be seriously injured. Plaintiff's doctor advised that plaintiff had sustained a strained muscle in her back, while defendant's doctor concluded that plaintiff had sustained a bruise. Though plaintiff still suffered from some pain, a settlement was negotiated for $60 and the property damage to her automobile. Later the pain increased and the final diagnosis was that of a herniated disc. In holding that the release should be set aside for mutual mistake, the court pointed out that the settlement was for a nominal sum, that both parties understood that the injuries were of trivial consequence and that the parties had not settled upon the basis of conditions which actually existed.

Again, in Ruggles v. Selby, 25 Ill App2d 1, 165 NE2d 733, plaintiff was injured in an automobile collision. Initial medical examination disclosed contusions of the skull, elbow and knee, with no fractures shown. Plaintiff appeared to recover, returned to work in 5 days and was discharged as a patient. Acting upon information received from the plaintiff and plaintiff's doctor, defendant obtained a release for a sum amounting to the damages to plaintiff's car and his then medical bills. Subsequently, subdural hematoma was discovered to have produced the condition of aphasia and plaintiff became wholly incom-

petent. In affirming the chancellor, who held that the release should be set aside, the court held that it was for the chancellor to determine whether the plaintiff had acted as the result of a mutual mistake and that the finding was not contrary to the manifest weight of the evidence, as the mistake was clearly shown.

In Smith v. Broscheid, 46 Ill App2d 117, 196 NE2d 380, the court set aside a release executed for a sum including property damage to plaintiff's automobile and her immediate medical expense. Plaintiff's car was struck from the rear by defendant's truck. Plaintiff was thrown into the windshield and dazed for a short period of time. She received but a superficial examination from her physician and no x-rays were taken. At the time of the signing of the release she was still in some pain, but she had been told by the doctor that it was merely a muscular strain and that she would be all right. Defendant's adjuster did not seek information from plaintiff's doctor nor obtain any medical report. The adjuster testified that he thought that there was no serious injury and that the settlement was more than fair. Subsequent examination disclosed a narrowing and degeneration of the intervertebral disc. The court held that the trial court was, under the facts, warranted in setting aside the release as there had been a mistake as to the nature and extent of the injury.

The examined authorities lead this court to conclude that the policy in this State must be, to borrow a biological term, viable, and persuasive opinions describe such policy as one providing liberal relief to a party who has signed a release under mistake as to the extent of the injuries. Ruggles v. Selby, 25 Ill App2d 1, 165 NE2d 733, whose language was adopted in Smith v. Broscheid, 46 Ill App2d 117 at p 123, 196 NE2d 380, quoting:

"The trend to set aside releases of personal-injury claims in those situations where the facts, when finally known, present an unconscionable result, is due in large measure to the fact that these are matters for the chancellor in equity who is vested with that degree of discretion and flexibility necessary to the doing of justice under the circumstances of each individual case."

In furtherance of such policy, it has been stated that Illinois does not permit the language of the release, no matter how all-encompassing, to bar the chancellor from scrutinizing the release and the circumstances of its execution for fairness. Ruggles v. Selby, 25 Ill App2d 1 at p 13, 165 NE2d 733. There being an infinite number of combinations of circumstances in which these transactions relating to the execution of a release may occur, such policy is most proper to insure the administration of justice. In the Ruggles case, the court quotes, at p 15:

"A determination of whether a mutual mistake of fact induced the settlement is not foreclosed by the express language of any pleading. Express language alone, wherever found, is not sufficient, but must be coupled with the factual element of an existing intent to include unknown injuries. The scope of the intent of the parties is a question of fact for the trier of fact. . . . . The existence of injuries of such a character that reasonable parties could not have entered into the agreement except through error is an element that weighs heavily against the finality of all-inclusive language."

Whatever the language of the release, the amount paid plaintiff in settlement amounted to hardly more

than the immediate out of pocket expense, her doctor bill and loss of time. This is borne out by the evidence concerning the transaction which was concluded in the course of 15 or 20 minutes during the plaintiff's lunch hour. Plaintiff testified that the settling adjuster said that he was in a hurry to another appointment, and his testimony is that he "can't truthfully verify" that he said such. The adjuster testified that he suggested that she tell him of her out of pocket expense. He also testified that he could have offered an amount less than $125, but that he couldn't say that he offered $75 in settlement.

The particular injury to the plaintiff described by the operating surgeon was of a character so serious as to clearly indicate that if known at the time of the execution of the release, the plaintiff would not have completed the settlement. Fraser v. Glass, 311 Ill App 336 at p 340, 35 NE2d 953; Ruggles v. Selby, 25 Ill App2d 1, 165 NE2d 733.

The controlling issue to be determined by the trial court is whether there was a mutual mistake of fact. The adjuster, acting in behalf of the defendant, testified that at the time of the settlement he saw no evidence of pain or discomfort suffered by the plaintiff and remarked that she had returned to her employment, that it was his understanding that she had recovered from the injury and that the plaintiff said that she was not having any trouble with her neck, and he further testified that he may have indicated to plaintiff that he thought it was a fair settlement. The adjuster apparently did not seek, nor did he obtain any verbal or other medical report upon the condition of the plaintiff, and from the testimony it appears that he did not think that such a report was necessary for settlement. It appears that the defendant's adjuster relied upon his observation and such inquiries as he saw fit to make. There is authority that we believe to be sound

and proper, that the source of the mistaken information upon which defendant relied is not controlling upon the issue of whether such release should be set aside. Ruggles v. Selby, 25 Ill App2d 1, 165 NE2d 733; Fraser v. Glass, 311 Ill App 336, 35 NE2d 953.

Upon this controlling issue, we believe that the chancellor could properly determine that there was a mutual mistake of fact made by the parties and that such determination is not contrary to the manifest weight of the evidence. Ruggles v. Selby, 25 Ill App2d 1 at p 19, 165 NE2d 733.

Upon the facts of this case it cannot be said that the plaintiff failed to exercise the care of an ordinarily prudent person in determining the nature and extent of the injuries sustained. She consulted her doctor, both for immediate treatment and prior to settlement, and obtained the doctor's prognosis. The inability of the usual x-ray examination to immediately disclose the nature and extent of the injury is certainly beyond her control. Plaintiff's economic status was such that she was necessarily conservative in procuring treatment for the injury and such status may be said to be apparent to all interested. In Fraser v. Glass, 311 Ill App 336, 35 NE2d 953, it was contended that plaintiff was negligent in failing to consult another doctor so that it might be said that she assumed the risk of future detriment. The court held that only reasonable diligence is required in procuring treatment. While the court in Thomas v. Hollowell, 20 Ill App2d 288, at p 291, 155 NE2d 827, refers to authority that a release given with "conscious ignorance" of the actual condition should not be classed as a "mistake" in the legal sense, the facts in this case authorize the conclusion that the plaintiff exercised reasonable diligence.

Defendant urges that the mistake is as to unknown or unanticipated consequences of a known in-

jury, and that such was expressly covered in the language of the release. As indicated hereinbefore, the settlement was negotiated substantially upon the basis of plaintiff's out of pocket expense. In Clancy v. Pacenti, 15 Ill App2d 171, 145 NE2d 802, the same issue was raised. The court held that since the settlement was for injuries then known and disclosed, the clause should not control. Again, in Fraser v. Glass, 311 Ill App 336, 3 NE2d 953, it was determined that the mistake of fact was as to the condition actually existing at the time of the settlement. Since there was a mistake as to the scope and extent of the known injuries, the clause as to unanticipated consequences should not be a bar to setting aside the release.

We think that the trial judge, sitting in equity, could fairly conclude that the defendant was not actually paying any sum for future unforeseen consequences of the injury.

These determinations as to whether or not there was a mutual mistake of fact as to the scope and extent of the injury and the collision in issue are matters of fact to be first determined by the trial court. This court is unable to conclude that such determinations are contrary to the manifest weight of the evidence.

In his argument defendant relies upon certain authorities wherein the Appellate Court sustained the trial court's refusal to set aside the release. In Child v. Lincoln Enterprises, Inc., 51 Ill App2d 76, at p 82, 200 NE2d 751, the question of liability was not resolved and the trial court, as a chancellor, found reason to question the credibility of the plaintiff as to her testimony. The reviewing court determined that the court's conclusion was not against the manifest weight of the evidence. In Thomas v. Hollowell, 20 Ill App2d 288, 155 NE2d 827, the opinion does not disclose whether plaintiff obtained or relied upon medical opinion in making the settlement. So far as can be

determined from the language of the opinion, the question of liability was a factor of settlement. Again, the issues concerned the aggravation of a pre-existing condition. We have noted the court's reference to holdings that "conscious ignorance" of actual conditions is not a mistake in the legal sense.

Again, in Lambert v. Remington Rand, Inc., 334 Ill App 176 at p 183, 78 NE2d 852, the case concerned the effort to set aside an Industrial Commission award, and there seemed to be aspects of actual fraud concerned. Defendant cites Wascher v. Lundeen, 32 Ill App2d 239, 177 NE2d 440, and Hudson v. Thies, 35 Ill App2d 189, 182 NE2d 760. In each instance the settlement was court approved and there was doubtful liability in each case, and such cases are not authority upon this problem.

The present case appears to involve all of the factors mentioned in the personal injuries cases wherein a release was set aside: the negligence of defendant was clear cut and not controverted; all parties believed that plaintiff had recovered at the time of the release; the condition was one which ordinary x-ray and customary examination would not reveal; and the evidence justifies the conclusion that the plaintiff acted with reasonable diligence. The causal connection between the collision with the later crippling result was sufficiently established by a competent surgeon, the amount of the settlement was grossly incommensurate in relation to the injury, and no injustice will result in correcting the situation.

The judgment of the Circuit Court of Champaign County, Illinois, is affirmed.

SMITH, P. J. and CRAVEN, J., concur.