Mary Fraser, Appellee, v. Algernon Glass et al., Appellants.

Gen. No. 9,686.

337

Heard in this court at
the May term, 1941. Opinion filed August 14, 1941.

BURKE & SCHENK, of Joliet, for appellants.

BARR & BARR, of Joliet, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.
This is an appeal from a decree of the circuit court
of Will county setting aside a release, and an endorse-

ment on a draft, signed by appellee, Mary Fraser, in settlement of all claims and rights of action against Algernon Glass on account of personal injuries in an automobile accident, on the ground of mistake of fact as to the nature and extent of the injuries. The cause was heard by the chancellor on the first count of the complaint only. The second count, for damages on account of the injuries appellee alleged she sustained, has not been tried and is not involved on this appeal.

From the pleadings and evidence, it appears that appellee was injured in an automobile accident on Saturday, November 24, 1934, while riding in a car driven by her husband. There was a collision between it and a car driven by Algernon Glass (referred to in the record as Al Glass) who was insured in the Inter-Insurance Exchange of the Chicago Motor Club. Her injuries consisted of bruises about the lower extremities, scratches on the leg, a large bruise on the right hip, and a cut to the bone on the knee about an inch and a half long, requiring sutures. Whether Dr. Williams, who treated appellee for her injuries, was called by the implied authority of Glass is in dispute, but we regard that question as not being determinative of any issue presented. The complaint charges misrepresentation of appellants, or mutual mistake, as to the extent of her injuries. The proofs show a mutual mistake.

Two days after the accident a claim adjuster of the Inter-Insurance Exchange called at the Fraser home to determine its liability and the feasibility of a settlement, but nothing was accomplished. He testified that Mr. and Mrs. Fraser said they would not be ready to settle until near the end of the week. On the following Friday, six days after the accident, a Mr. Glenn (since deceased), another adjuster for the Inter-Insurance Exchange, called at the Fraser home. Appellee and her husband testified he said he had a lot of business and was in a hurry. Mr. Fraser told him his car re-

pairs would cost $102. At Glenn's suggestion, Fraser called Dr. Williams by telephone, and they both talked with the doctor about the extent of appellee's injuries and the amount of his bill. Appellee's leg began to swell immediately after the accident and gradually grew worse. At the time the release was signed, the cut on the knee had not healed, and appellee was experiencing pain. The leg was swollen to the ankle. In walking around the house she used a rope looped around her foot and held in her hand to prevent pulling on the cut. She had to be helped up and down stairs. Dr. Williams had treated her four or five times, and on or before the time of the settlement, told her her disabilities would be of a minor character. Dr. Williams testified that the adjuster informed him in the telephone conversation of the pending settlement and that they would like to know the amount of his bill. Dr. Williams told Fraser his wife was getting along all right; that he expected she would be around in a few days, and he did not think he would have to call again. Glenn then talked with the doctor, and thereafter told appellee and her husband the injuries would be superficial and would not trouble her very much, indicating he got the information from the doctor. The doctor fixed his fees at $15. A settlement of $150 was then agreed upon. Appellee and her husband testified it was agreed that $102 was allocated for car repairs; $15 for doctor bill, and $33 to appellee for loss of time from her business of soliciting hosiery orders. Their testimony is not controverted. They signed a general release and discharge of Glass from all claims and rights of action which they ever or then had against him, and specifically on account of the automobile accident. Glenn gave them a draft for $150 on the Inter-Insurance Exchange, payable to them jointly. The draft was cashed the next day, and bears their endorsement in full settlement of all claims and rights of action against Glass growing out of the

automobile accident. Appellant and her husband both testified they relied upon the statements of Dr. Williams, and of Glenn as to what the doctor told him, and that if the doctor had not said her injuries were slight and would readily heal, she would not have signed the release.

After the settlement appellee's condition became worse. On the following Tuesday, Dr. Williams was again called, and came two or three times after that. An infra-red light was used two or three times each day. Appellee's condition continued to grow worse and Dr. Shreffler was called about the latter part of December or the first part of January. The knee cut had healed, but he found an extensive blood clot in the superficial vein of the right leg, which was quite swollen. The clot could be easily felt along the vein. The treatment prescribed was the elevation of the leg and ice packs along the area involved. This was continued about ten weeks, during which time appellee remained in bed. Dr. Shreffler testified the presence of an infection accounted for the clot; that the symptoms are the presence of the clot itself and the swelling of the leg he found at that time; that the clot or swelling could cause pain and suffering. Appellee testified there was another clot in her other leg and Dr. Shreffler testified it came from the accident. Dr. Williams testified he was honestly mistaken in his judgment as to the extent of her injuries on the date of the settlement, and corroborated appellee's testimony that after the settlement he told her he had made a mistake in her case. He also testified he later learned she had developed a blood clot.

The claims of appellants are, that a court of equity will set aside a release only for a mistake of a past or present existing fact; that there is no showing that the blood clots were present when the settlement was made; that the clots developed later and that the mistake of fact was as to such subsequent results from

the injuries; that it is not enough that appellee was mistaken as to an opinion or judgment of the doctor; that she was in a better position to know the facts than appellants, could have consulted another doctor, and by her neglect in that respect, in the absence of fraud by appellant, she assumed the risk and cannot maintain the action; that she was guilty of laches in bringing the suit, made no prior tender of the full amount of the settlement, and failed to prove her case by clear and convincing evidence.

Appellants cite and rely upon several cases from other jurisdictions holding that a mistake as to future developments from an injury is not sufficient to set aside a settlement agreement. Appellee agrees with those holdings, but claims, and we agree with her, that this is not a suit based upon a mistake of that kind. Neither is it a suit to set aside the release because blood clots developed, but it is definitely based upon a mistake in appellee's physical condition at the time of the settlement from infection then present, and that her condition was then more serious than she or Dr. Williams knew.

Appellee testified she noticed the swelling and infection from the time she was injured, and Dr. Williams testified he administered standard antiseptics. Dr. Shreffler testified the infection accounted for the blood clots. They were, therefore, results or incidents of the infection. It cannot be doubted the infection was present when the settlement was made, as shown by the swelling and pain, the unhealed cut, and the testimony of Dr. Williams and Dr. Shreffler. The latter testified the clot or swelling could cause pain and suffering. There is no showing, and it is not claimed there was any condition other than the infection that would account for the swelling and pain.

It is to be noticed that in addition to the testimony as to the telephone conversations with Mr. Fraser and Mr. Glenn, Dr. Williams testified he also told appellee

on or before the settlement that her disabilities would be of a minor character. In *Scheer v. Rockne Motors Corp.*, 68 F. (2d) 942, the court said: "There is indeed no absolute line to be drawn between mistakes as to future, and as to present facts. To tell a layman who has been injured that he will be about again in a short time is to do more than prophesy about his recovery. No doubt it is a forecast, but it is ordinarily more than a forecast; it is an assurance as to his present condition, and so understood."

It has been held that the statement that the releasor "would be all right within thirty days," *Atchison, T. & S. F. R. Co. v. Peterson*, 34 Ariz. 292, 271 Pac. 406, and the statement that the releasor was "pretty well along toward being cured," *Granger v. Chicago, M. & St. P. R. Co.*, 194 Wis. 51, 215 N. W. 576, were statements of a past or present fact. Under the facts shown in this record the mistake was clearly as to an existing fact, *i.e.*, appellee's condition at the time of the settlement. The mistake was not as to whether blood clots would develop, but was as to the seriousness of the infection then present. Appellee relied upon the statements of the doctor, and there is nothing to indicate she was not justified in so doing, or was negligent in not calling another doctor less than a week after the accident. She was in no better position to know the pathology connected with her condition than appellants. It is not enough to prevent relief in case of mutual mistake that the party might, had he done all within his power, have ascertained the truth but only reasonable diligence is required. (*Winkelman v. Erwin*, 333 Ill. 636; *Hoops v. Fitzgerald*, 204 Id. 325; *Barker v. Fitzgerald*, 105 Ill. App. 536.)

A court of equity may grant cancellation where the party requesting it has entered into a contract without negligence, through a material mistake of fact, when it can do so without injustice to the other party. The fact concerning which the mistake was made must be

material to the transaction and effect its substance, and must not result from the want of such care and diligence as would be exercised by persons of reasonable prudence under the same circumstances, and to warrant cancellation the evidence must be clear and positive. (*Smuk v. Hryniewiecki*, 369 Ill. 546, and cases there cited.) The rule puts the burden upon the person seeking cancellation to show the mistake by clear and positive evidence, but no more than that is required. (*Winkelman v. Erwin, supra; Munnis v. Northern Hotel Co.*, 237 Ill. App. 50.)

The mutual mistake in the instant case is not only proved by clear and convincing evidence, but it is not questioned by appellants except by the untenable assertion that it was a mistake as to the future. As the suit is based upon a mistake as to appellee's condition at the time the settlement was made, and not upon whether blood clots were then present, it makes no difference whether they were then present, either in an initial or an advanced stage.

The annotations in 48 A. L. R. 1462, and 117 A. L. R. 1022 lay down the doctrine that "It is well settled in the United States, according to the great weight of authority, that a general release for personal injuries may, under proper circumstances, be avoided on the ground of mutual mistake as to the nature and seriousness of the injury." In support of the statement a large number of cases are cited, which need not be repeated here. In some of them the courts hold that inadequacy of consideration (as here) is one of the conditions tending to the conclusion the release was not binding because of mistake. "Proper circumstances" mentioned in the rule includes cases where a release can be set aside without injustice to the other party. (*Smuk v. Hryniewiecki, supra; Munnis v. Northern Hotel Co., supra.*) In the latter case cancellation of a release was awarded where the plaintiff and the doctor were mistaken as to the nature and

extent of the injuries, and the mistake was mutual between the parties. It was there said: "But whether it was mutual or unilateral, the complainant is entitled to have the release rescinded because of the material mistake of fact. 21 Corpus Juris, pp. 87, 88. The evidence does not show that any injustice will be done to the defendants by the rescission of the release. The conclusions we have expressed are amply supported by adjudicated cases in which the facts are similar to the facts in the case at bar." (Citing cases.) Earlier in the opinion it is said: "We are of the opinion that the evidence in the case at bar clearly and convincingly shows that the complainant is entitled to have the release rescinded on the ground of an existing material mistake of fact as to the nature and extent of the actual injuries of the complainant; and that the complainant is entitled to that relief independently of the question whether the release was obtained by inequitable and unconscionable methods, and even though it should be assumed that he was in a normal state of mind and fully capable of dealing on equal terms with the defendants." This, in our opinion, is a correct statement of the law, and is in accord with the majority rule set out in the A. L. R. annotations above cited. Cases from other jurisdictions, not in harmony with the majority rule, relied upon by appellants, are not persuasive.

Appellants contend that under *Beebe v. Swartwout,* 8 Ill. 162, even though the evidence clearly shows a mistake of facts, a release executed in the absence of fraud or false representations on the part of the releasee will not be set aside. In that case Swartwout deeded Beebe some land with a covenant of quiet enjoyment, taking back a mortgage for part of the purchase price. Upon foreclosure, Beebe sought to rescind the transaction on the ground that the title was defective and others were in possession of portions of the premises. Such persons did not have a paramount

title, and the court held their possession was not a breach of the covenant for quiet enjoyment. Beebe's counsel sought to invoke the doctrine of mistake on the ground that he mistakenly paid money for nothing, and fraud, on the ground that Swartwout knew others were in possession and fraudulently represented he had good title. The court held that neither fraud nor mistake was present and denied rescission. In the course of the opinion, the court said: "There is a distinction between contracts of an executory character and those which are fully executed by deeds or conveyances. In the latter case, there can be no rescission of the contract, unless it has been tainted by actual fraud." The doctrine there enunciated has never been subsequently approved or cited by any of the courts of review of this State, but in the later cases of *Schaefer v. Henze,* 337 Ill. 41 and *Winkelman v. Erwin, supra,* executed conveyances were set aside on the sole ground of mistake. As demonstrated by those cases, the manifest policy of the Supreme Court makes no distinction between executed and executory contracts as a basis for relief, but relief is based upon whether the setting aside of a release for mistake of fact can be done without injustice to the other party. (*Smuk v. Hryniewiecki, supra.*) The logic of this basis as compared with a holding depending upon whether a contract is executed or executory, is obvious. In our opinion, the Supreme Court no longer adheres to the language quoted from the *Beebe* case, and it is not controlling here. The holdings in this State are in harmony with the general rule of the majority of other jurisdictions as pointed out in the annotations in A. L. R. above mentioned, and in the instant case, it is obvious that the release can be set aside without injustice to appellants.

The claim that appellee was guilty of laches in bringing the suit was not raised in the court below and will not be considered on appeal. Before bring-

ing suit appellee tendered the $33 received by her to the Chicago Motor Club, one of the defendants. It was afterward kept good by a deposit of the amount in court for the benefit of all the defendants. No case is cited and we know of no authority which holds that she would be required to tender back the money allocated in the settlement to her husband and the doctor. No question as to the sufficiency of the tender was raised below and it is now too late to do so.

In our opinion, the decree is sustained by the law and the evidence and there is no merit in appellants' several motions for a new trial, for a rehearing and in arrest of judgment and the chancellor did not err in its rulings upon these motions nor can it be said that cashing the draft, on the day after the settlement, under the conditions shown by the testimony, was a ratification of the settlement. The decree will be affirmed.

*Decree affirmed.*