**Lillian Byrnes Child, Plaintiff-Appellant, v. Lincoln Enterprises, Inc., a Corporation, Defendant-Appellee.**

Gen. No. 10,530.

Fourth District.

August 17, 1964.

J. Waldo Ackerman, Jr., of Springfield, for appellant.

Olsen & Cantrill, of Springfield, for appellee.

WRIGHT, JUSTICE.

Plaintiff, Lillian Byrnes Child, was injured in an automobile accident on January 12, 1962, in the City of Springfield, Illinois, while riding as a passenger in a taxicab owned by the defendant, Lincoln Enterprises, Inc. On February 13, 1962, the plaintiff signed a Covenant Not to Sue the defendant for a consideration of $250. The plaintiff, thereafter, filed a suit for damages against defendant alleging serious and permanent injuries. The defendant, by counterclaim, based upon the Covenant Not to Sue, sought to enjoin plaintiff from proceeding with her cause of action. Plaintiff then amended her complaint alleging fraud and mutual mistake and praying that the court set aside the Covenant Not to Sue so that plaintiff could proceed with her action at law for damages. The trial court sitting in Chancery, without a jury, heard the evidence and refused to set aside the Covenant Not to Sue and granted the injunction sought by the defendant enjoining plaintiff from proceeding with her case at law for damages. It is from this judgment order that plaintiff appeals.

It is plaintiff's theory that the Covenant Not to Sue was voidable because it was obtained by fraud and based on mutual mistake as to the nature and extent of her injuries. Defendant contends that the Covenant Not to Sue was taken as a purchase of peace, and entered into between the parties of full legal capacity, and that no fraud or mutual mistake was present.

Plaintiff, 72 years of age, was a passenger in defendant's taxicab on January 12, 1962, when it was involved in an intersection collision at Pasfield and Adams Streets in Springfield, Illinois. The defendant taxi was proceeding south on Pasfield Street. A stop sign controls traffic going south on Pasfield at its intersection with Adams Street. On the date of the collision, the temperature was below zero and the streets at the intersection were covered with ice and snow. The defendant taxi had traveled 6 or 8 feet into the intersection when it collided with a car proceeding in a westerly direction on Adams Street.

Between January 12, 1962, the date of the injury, and February 13, 1962, the date of the signing of the Covenant Not to Sue, the plaintiff had several conversations with William L. Sullivan who was a claim adjuster for the insurance carrier of the defendant taxicab company. Sullivan had investigated the circumstances surrounding the collision and plaintiff had not. Plaintiff testified that Sullivan told her he was a lawyer and that she believed him. On the other hand, Sullivan denies that he told plaintiff that he was an attorney, which he was not, but admits that he told her that he had legal training and had gone to law school. It is agreed that Sullivan told plaintiff that he had investigated the circumstances and that the cab company and cab driver were not liable to plaintiff for her injuries. Sullivan told plaintiff that the driver of the other car which was involved in the collision had had another accident before this one and he was responsible for the collision.

Plaintiff told Sullivan that she was anxious to get proper medical care which cost money and that she didn't have it but Sullivan told her he could not guarantee bills unless she gave them a release.

Although the parties agree that they discussed making a claim for injuries against the driver of the other car, they differ as to the substance of that conversa-

79

tion. Plaintiff insists that Sullivan told her that he would prosecute the other driver for her if she signed the Covenant Not to Sue. She testified that her understanding of the covenant was that the signing of it would free Sullivan to proceed against the driver of the other car, would free him to work on her case. Sullivan, on the other hand, testified that he told plaintiff that he couldn't bring suit for her, but that he would see that his company furnished her with any statements it might have, and witnesses that he could locate, and anything else that she might need to collect from the other driver.

The plaintiff testified that Mr. Sullivan told her that before he could deal with her that she would have to be examined by a medical doctor. After that, she saw a Dr. Cowdin for an examination. The plaintiff gave her age to the doctor and also to Mr. Sullivan as 56 years instead of 72 years, her true age. She testified that although she was able physically to practice her profession until her injury that if her actual age of 72 were known, she would not be allowed to work at the hospital. She explained that this was the reason she mis-stated her age.

Dr. Fred P. Cowdin, a medical doctor, practicing in Springfield, Illinois, testified that he first saw the plaintiff on January 27, 1962. He stated that she was suffering a great deal and gave a history of being in a taxi when there was a collision. He stated that at that time she had numerous symptoms of a whiplash injury, had a bump on her forehead and her shoulder was very painful. On manipulation of her arm, she was having a great deal of pain. He didn't find any fractures and later x-rays at the hospital revealed that there were no fractures. He could not tell at the time of the first examination whether or not her injuries were permanent. However, he was of the opinion that she would be able to return to work in a few weeks. At that time, he did not know that she had a preexisting

arthritic condition. Dr. Cowdin testified that he apparently was mistaken in his original diagnosis as to the nature and extent of her injuries because at the time he testified, it had been a year and a half after the accident and the plaintiff was still complaining of pain.

The plaintiff was examined by an orthopedic specialist on May 19, 1962, and he testified in substance that the plaintiff had a preexisting arthritic condition before the accident and the accident aggravated the arthritis. In addition thereto, she suffered a cervical sprain. He testified that the trauma could precipitate the arthritis even though no pain had been experienced prior to the accident. He stated that sometimes after trauma, pain will not develop from the arthritic condition for a matter of days or in some cases four or six weeks, and that it varied according to the individual. He stated that if pain continued to be present in the plaintiff that he would recommend a cervical collar and traction. He stated further that he suspected that the plaintiff was older than 56 when he examined her.

Under what facts and circumstances a release of a personal injury claim may be voided for mistake as to the nature and extent of the injuries or for fraud has been the subject of many recent decisions by courts of review in Illinois. Clancy v. Pacenti, 15 Ill App2d 171, 145 NE2d 802; Ruggles v. Selby, 25 Ill App2d 1, 165 NE2d 733; Thomas v. Hollowell, 20 Ill App2d 288, 155 NE2d 827; Hudson v. Thies, 35 Ill App 2d 189, 182 NE2d 760; Smith v. Broscheid, 46 Ill App 2d 117, 196 NE2d 380. The question is also exhaustively covered in 71 ALR2d 82.

■ ■ It would appear that, generally speaking, the modern trend of decisions is toward liberally relieving a party who has signed a release under a mistake as to the extent of his injuries. Smith v. Broscheid, supra. The trend to set aside releases of

personal injury claim in those situations where the facts, when finally known, present an unconscionable result, is due in large measure to the fact that these are matters for the chancellor in equity who is vested with that degree of discretion and flexibility necessary to the doing of justice under the circumstances of each individual case. Ruggles v. Selby, supra.

■■ The law favors compromise and, accordingly, the burden of proof is placed on the one contending that a release was secured as a result of mistake or misrepresentation or fraud and such mistake or misrepresentation or fraud must be shown by clear and convincing evidence. Hudson v. Thies, supra, 71 ALR 2d 82, 88–89.

■ We find no difficulty with the law as promulgated in the foregoing decisions or its application to a given factual situation. The basic question here is whether or not the findings of the trial court and its judgment are against the manifest weight of the evidence. It is not our province to substitute our judgment for that of the trial court. Where the testimony is contradictory, the trial court's finding, on review, is to be accorded the same weight as the verdict of the jury and will not be set aside unless it is manifestly against the weight of the evidence. Porterfield v. Truck Ins. Exchange, 28 Ill App2d 195, 171 NE2d 108.

The trial court in a written memorandum confirming his oral decision stated that he did not feel that there were any facts in the case which supported by clear and convincing evidence any misrepresentation of a material fact, fraud, or overreaching. The chancellor observed that he was in equity and the conduct of the plaintiff needed some examination. The plaintiff misrepresented her age to both doctors and to the insurance adjuster by fifteen years and this alone, he noted, caused a raising of eyebrows as to the accuracy of statements attributed by the plaintiff to the insurance adjuster. The trial court further observed that

to this extent the mistake of fact was unilateral and unilaterally self-induced and was not mutual.

■ It is the province of the trial judge, hearing the case without a jury, to determine the credibility of the witnesses and the weight to be given their testimony, and his judgment will not be disturbed unless manifestly contrary to the weight of the evidence. Hall v. Illinois Nat. Ins. Co., 34 Ill App2d 167, 180 NE2d 695, Rude v. Seibert, 22 Ill App2d 477, 161 NE 2d 39.

■ We have carefully reviewed all of the evidence in the record before us and are convinced that the findings of the trial court that the Covenant Not to Sue was not obtained by misrepresentation, overreaching or other fraud, and that said covenant is not based upon mutual mistake, is not manifestly contrary to the weight of the evidence.

■ ■ The defendant has cross-appealed and contends in this court as he did below that attorney fees should be allowed it as damages for breach of the Covenant Not to Sue. Attorney fees and the ordinary expenses and burden of litigation are not allowable to the successful party in the absence of an agreement or stipulation specifically authorizing the allowance of attorney fees, or in the absence of a statute providing for the taxing of attorney fees against the losing party. Ritter v. Ritter, 381 Ill 549, 46 NE2d 41. The rule is stated in ILP, Volume 15, Damages, section 62, as follows: "Attorney fees are ordinarily not allowable either as costs or damages at law or in chancery unless that is permitted by statute or by virtue of contract stipulation."

The judgment of the trial court is affirmed.

Judgment affirmed.

DOVE, P. J. and REYNOLDS, J., concur.