SHIRLEY KIEST, Plaintiff-Appellant, *v.* JOHN SCHRAWDER, Defendant-Appellee.

Fourth District   No. 14399

Opinion filed January 27, 1978.

CRAVEN, J., dissenting.

Hagin Harper, of Harper & McClellan, of Champaign, for appellant.

Robert P. Moore and Mark H. Merritt, both of Hayes & Moore, of Champaign, for appellee.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:
Mutual mistake of fact?
Release void?
No.
We affirm.
The plaintiff, Shirley Kiest, and the defendant, John Schrawder, were

driving automobiles which collided on November 28, 1973, resulting in the total loss of the plaintiff's car and personal injuries to her. Mrs. Kiest began to be treated by a physician, and the bills for medical expenses were being paid by the defendant's insurer. Mrs. Kiest was then contacted by an adjustor for the defendant's insurer some nine weeks after the collision for the purpose of possible settlement of the plaintiff's claim. Both the plaintiff and the adjustor believed the plaintiff to have suffered an ordinary whiplash injury—the diagnosis arrived at by Mrs. Kiest's doctor, told to Mrs. Kiest, and relayed by her to the adjustor. However, her neck was still painful, and her husband advised her not to sign the release because he did not believe that she was "all right." About five weeks later, it turns out, a full release of the plaintiff's claim against the defendant arising from the collision was executed by Mrs. Kiest and her husband on March 12, 1974, more than 14 weeks after the accident. The release provided for payment of $5,486.17 (including property damage and medical expenses) and for payment of reasonable and necessary medical expenses not to exceed $500 incurred within one year from the date of the collision. The $5,486.17 was paid under the release, and about $97 in medical expenses under the $500, one-year limitation, was paid later.

Unfortunately, the plaintiff's injury was later determined to be more serious. More than one year after the accident, she underwent major surgery on a disk in her back including a bone graft from her hip. The cost of this surgery was between $3,000 and $4,000. The defendant's insurer refused to pay for these medical expenses.

Plaintiff then brought suit for $50,000 damages alleging that the release should be set aside due to a mutual mistake of fact. Upon motion by the defendant asserting the affirmative defense of the release and after a hearing, the trial court dismissed the plaintiff's action. This appeal ensued.

■■ On appeal, the primary contention pursued by the plaintiff is that the trial court erred in failing to set aside the release on the basis of a mutual mistake of fact. That is, the plaintiff argues that both she and the defendant (by way of his insurer's adjustor) were mutually mistaken with respect to a material fact: the extent of the injuries sustained by the plaintiff. But in reality, we do not have here a *mutual* mistake of fact. At best, we have a *unilateral* mistake constructively adopted by—or relied upon—by another. It is the same mistake, not another, different one. The adjustor merely accepted Mrs. Kiest's assertion that her physician diagnosed her injury as whiplash, and paid her accordingly.

■■ In *Ogren v. Graves* (1976), 39 Ill. App. 3d 620, 622, 350 N.E.2d 249, 251, Mr. Justice Moran succinctly summarized the Illinois view on the enforcement of releases:

"A release, in essence, is the abandoning of a claim to the person

against whom the claim exists and where the release is executed with knowledge of its meaning, causes of action covered by the release are barred. (*Shaw v. Close*, 92 Ill. App. 2d 1, 3 (1968).) Because the law favors compromise, the party contending that a release was secured as a result of fraud, misrepresentation, or mistake, must prove such by clear and convincing evidence. (*Child v. Lincoln Enterprises, Inc.*, 51 Ill. App. 2d 76, 82 (1964).) A person claiming that a release is invalid because of a mistake must show that a mistake is mutual. A unilateral or self induced mistake will be insufficient to void a release. (*Welsh v. Centa*, 75 Ill. App. 2d 305, 311-12 (1966); see *Hudson v. Thies*, 35 Ill. App. 2d 189, 201-02 (1962), *aff'd*, 27 Ill. 2d 548 (1963).) On review the trial court's finding will not be set aside unless it is against the manifest weight of the evidence. *Child v. Lincoln Enterprises, Inc.*, at 82."

In another recent Illinois case, the comment was made that: "The trend is to set aside releases of personal injury claims in a situation where the facts, when finally known, present an unconscionable result". (*Florkiewicz v. Gonzalez* (1976), 38 Ill. App. 3d 115, 120, 347 N.E.2d 401, 405.) This view was also stated in *Ruggles v. Selby* (1960), 25 Ill. App. 2d 1, 12, 165 N.E.2d 733, 739, where the court observed that this trend " * * * is due in large measure to the fact that these are matters for the chancellor in equity who is vested with that degree of discretion and flexibility necessary to the doing of justice under the circumstances of each individual case." See also *Welsh v. Centa* (1966), 75 Ill. App. 2d 305, 221 N.E.2d 106, 109-110.

The question is, therefore, whether the result here is unconscionable. We have concluded that it is not.

■■ Plaintiff argues that the length of time between the collision and the execution of the release was too short to determine the extent of the injury. Yet, more than 3½ months passed between the collision and the release. There was no pressure of time urged upon the plaintiff here, in contrast to the cases setting aside a release and emphasizing that it had been executed only a short time after the accident. *Florkiewicz*, 3 days; *Smith v. Broscheid* (1964), 46 Ill. App. 2d 117, 196 N.E.2d 380, 2 weeks; and *Fraser v. Glass* (1941), 311 Ill. App. 336, 35 N.E.2d 953, 6 days.

■■ Further, the plaintiff asserts that the discrepancy between the amount paid in consideration for the release and the amount of the expenses incurred after the release demonstrates that the result is unconscionable for her. Here, the release provided for payment of $5,486.17 plus medical expenses not to exceed $500 incurred within a year after the collision, and the plaintiff suffered additional losses of $3,000 to $4,000 due to the surgery which was not paid by the defendant's insurer. Again, this discrepancy is not unconscionable, in contrast with the cases

setting aside releases and emphasizing the very considerable losses suffered beyond the amounts provided in those releases. (*Florkiewicz*, $30 release for a skull fracture requiring 12-days' hospitalization; *Reede v. Treat* (1965), 62 Ill. App. 2d 120, 210 N.E.2d 833, $125 release for a back injury for which the trial court awarded $11,000 damages; *Smith v. Broscheid*, $216.99 release for a back injury for which the trial court awarded $9,500 damages; *Ruggles v. Selby* (1960), 25 Ill. App. 2d 1, 165 N.E.2d 733, $900 release for injuries for which the trial court awarded $43,000 damages; and *Clancy v. Pacenti* (1957), 15 Ill. App. 2d 171, 145 N.E.2d 802, $150 release for a back injury for which the trial court awarded $22,500 damages.) The record before us reflects that of the total $5,486.17 paid, $2,700 was for property damage and car rental, $682.85 for medical expenses and $2,103.32 for pain and suffering. The amount of the release here could hardly be labeled a "token payment."

We would also note that the record reflects no improprieties on the part of the adjustor—no chasing, no badgering, no pressure, no misrepresentations.

We emphasize that the plaintiff here can hardly claim that she made a mistake. She still suffered pain from her injury at the time of the release, and her husband had advised her at one point not to sign the release because she did not appear to be "all right." Additionally, she signed a release which provided for payment not to exceed an additional $500 in medical expenses, which seems to be an admission of uncertainty as to the extent of her condition.

■■ Lastly, the plaintiff contends that the trial court erred in excluding her testimony as to the information told or presented to her by her physician. Plaintiff argues that this information would be relevant to her theory of mutual mistake. Although the relevancy of the testimony cannot be disputed, likewise there can be no dispute that the testimony would have constituted hearsay—which is not admissible. The physician himself should have been called to testify at the hearing on the section 48 (Ill. Rev. Stat. 1975, ch. 110, par. 48) motion to dismiss if the plaintiff wished to present such evidence.

Therefore, the judgment of the circuit court dismissing the plaintiff's action is affirmed.

Affirmed.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

This personal injury and property damage case was settled for what ultimately turns out to be something less than the specials. At the time of

the settlement, neither the plaintiff nor the insurance company, acting for and on behalf of the defendant, knew nor could reasonably anticipate, the severe nature of the subsequent need for surgical procedure. The absence of such knowledge and the subsequent need for surgery is a basis for finding of a mutual mistake of fact. Such would be sufficient to set aside the release.

It is interesting to note the mathematics of this settlement. The insurance company paid $5,486. The property damage of the automobile was estimated variously from $2,766 to $3,400. The medical expenses incurred prior to settlement were about $700 with an additional $100 incurred and paid within the one year after the settlement. The evidence as to loss of wages is probably insufficient to establish a dollar value on the loss, but there was a loss in this category. The surgery subsequent to the settlement appears to have been between $3,000 and $4,000. Thus, the settlement was less than the specials actually incurred by some $1,500. The settlement, as the majority opinion notes, provided at most some $2,000 for the pain and suffering—assuming nothing for the subsequent surgery.

Thus, not only was the settlement inadequate, it was clearly made by the parties in the mistaken belief that no substantial subsequent medical expenses would be incurred. Such mutual mistake of fact mandates a setting aside of the release.