ANNE MEYER *et al.*, Ex'rs under the Last Will and Testament of Milton C. Meyer, Deceased, Plaintiffs-Appellants, *v.* GEORGE W. MURRAY *et al.*, Defendants.— (CHECKER TAXI COMPANY, INC., Defendant-Appellee.)

First District (3rd Division)    No. 78-980

Opinion filed March 7, 1979.—Rehearing denied April 16, 1979.

Allen H. Meyer, of Chicago, for appellants.

Jesmer and Harris, of Chicago (Julius Jesmer, Charles Tannen, and Allen Wiederer, of counsel), for appellee.

Mr. JUSTICE RIZZI delivered the opinion of the court:

This action was brought to recover damages for the alleged wrongful death of Milton C. Meyer, who was a passenger in a Checker Taxi Company cab when it was struck by another automobile. The Checker Taxi Company, its driver, William Mangan, and the driver of the automobile, George W. Murray, were named as defendants. Defendant Checker Taxi Company filed a motion to dismiss, based on a covenant not to sue executed by the decedent, Milton C. Meyer. The trial court judge granted the motion and dismissed the action as to defendant, Checker Taxi Company. The suit remains pending as to the other defendants. The plaintiffs are appealing from the dismissal order and from the order denying their petition to vacate the dismissal order pursuant to Supreme Court Rule 304. We reverse and remand.

The accident occurred on July 20, 1977. The cab was proceeding in a southerly direction in the extreme left lane of traffic on Michigan Avenue near its intersection with Adams Street in Chicago, Illinois. The automobile being driven by George W. Murray was also proceeding in a southerly direction. The Murray automobile tried to pass the cab on the left side and went over the center line of Michigan Avenue. Murray "couldn't pass so he slowed and tried to get back into the left lane and as he did the right fender" of the Murray automobile "hit the left rear of the cab." At the time of the accident the cab was proceeding slowly. The accident happened about 8:15 a.m. The police arrived at the scene shortly thereafter.

After these events, Milton C. Meyer continued the trip to his office at 1303 South Michigan Avenue. He arrived at the office about 9 a.m. and worked for a few hours. During that time he was visited by a claims adjuster for the Checker Taxi Company. Milton C. Meyer then completed in his own handwriting and in his own words a document entitled "Report of Accident" which he signed and dated. He also executed a covenant not to sue the Checker Taxi Company or any of its agents or employees for damages or compensation as a result of the accident; he accepted a check for $250 in consideration for the covenant not to sue.

About noon, he apparently was not feeling well and went home. Later in the day he had a heart seizure and was taken to a hospital where he died that same day. The Medical Certificate of Death provides that he died from: (a) acute coronary thrombosis having an interval of minutes between onset and death; and, (b) arteriosclerotic heart disease having an interval of years between onset and death. He was 72 years old at the time of death.

The "Report of Accident," which was completed in the decedent's own writing, states, *inter alia*:

"REPORT OF ACCIDENT
\* \* \*

IN WHAT DIRECTION WAS CAB GOING?  South
APPROX. SPEED  Slow  IN WHAT DIRECTION WAS THE
OTHER CAR GOING?  South
\* \* \*

WAS ANYONE INJURED?  Yes  WERE YOU
INJURED?  Yes  WHOM DO YOU CONSIDER TO BLAME
FOR THE ACCIDENT?  Other Car
\* \* \*

DESCRIBE ACCIDENT IN BRIEF IN YOUR OWN WORDS.
The cab was southbound on Michigan Ave. in the extreme left lane. A blue car tried to pass the cab on the left lane going over the center line. The other driver saw he couldn't pass, so he slowed and tried to get back into the left lane and as he did the right fender of the other car hit the left rear of the cab. I twisted my back in this accident. The above is true and correct.

SIGNATURE /s/ Milton Meyer"

An estate was opened in August 1977, naming the plaintiffs as executors. On September 26, 1977, the check for $250 was returned to the defendant's representative accompanied by a letter from the plaintiffs' attorney stating that it was "unacceptable, being based upon a mistake as to the extent, character and permanency of the injuries." Subsequently, this lawsuit was filed.

Defendant Checker Taxi Company served and filed a notice to admit facts pursuant to Supreme Court Rule 216, referring to a copy of the "Report of Accident." The plaintiffs admit the document was completed and signed by the decedent. Defendant Checker Taxi Company also filed a motion to dismiss the action against it based upon the covenant not to sue executed by the decedent, Milton C. Meyer. The plaintiffs filed a motion to strike the motion to dismiss for the reason, allegedly, that the "covenant not to sue was entered into by plaintiffs' decedent under a mistake as to the extent, character and permanency of his injuries." In support of their motion, the plaintiffs filed the affidavit of Allen H. Meyer, who is one of the executors and plaintiffs as well as being the attorney representing all the plaintiffs in the lawsuit. They also filed the affidavit of a physician.

The affidavit of the physician states that he saw the decedent on the day of the occurrence for emergency medical attention from about 9:25 p.m. until the decedent's death 1½ hours later. Also included in the affidavit is a statement that in his opinion the "stress and blunt trauma of the accident could have been immediately causal to either a myocardial infarction or rupture of aneurysm producing a cardiopulmonary arrest."

The trial court judge entered an order denying the plaintiffs' motion to strike and granted the Checker Taxi Company's motion to dismiss. Subsequently, the plaintiffs filed a petition to vacate the dismissal order. Alternatively, they requested leave to amend their affidavits or transfer of the case to the chancery division of the circuit court. The trial court judge denied the petition.

■■ The question of setting aside releases or covenants not to sue based on a mistake of fact with respect to the nature and extent of the injuries has been the subject of many cases in Illinois, starting, apparently, with *Munnis v. Northern Hotel Co.*, 237 Ill. App. 50 (1925). The latest reported case appears to be *Kiest v. Schrawder*, 56 Ill. App. 3d 732, 372 N.E.2d 442 (1978). The cases on this subject are treated *sui generis* and the rules governing releases from liability for nonpersonal injury torts or breaches of contracts do not apply. *Clancy v. Pacenti*, 15 Ill. App. 2d 171, 176, 145 N.E.2d 802, 805 (1957); *Ruggles v. Selby*, 25 Ill. App. 2d 1, 16, 165 N.E.2d 733, 739 (1960).

■■ ■ The cases hold that a release or covenant may be set aside under certain circumstances if the agreement was entered into through a mutual mistake of fact. (*Martin v. Po-Jo, Inc.*, 104 Ill. App. 2d 462, 467, 244 N.E.2d 851, 854 (1969); *Welsh v. Centa*, 75 Ill. App. 2d 305, 311, 312, 221 N.E.2d 106, 109 (1966).) Once the defendant establishes the existence of the document, legal and binding on its face, the burden shifts to the plaintiff to prove it invalid by clear and convincing evidence. (*Blaylock v. Toledo, Peoria & Western R.R.*, 43 Ill. App. 3d 35, 37, 356 N.E.2d 639, 641 (1976); *Welsh*, 75 Ill. App. 2d 305, 312, 221 N.E.2d 106, 110; *Ogren v. Graves*, 39 Ill. App. 3d 620, 623, 350 N.E.2d 249, 251 (1976); *Martin*, 104 Ill. App. 2d 462, 467, 244 N.E.2d 851, 854.) It is not the burden of the defendant to establish the absence of a mutual mistake of fact. (*Blaylock*, 43 Ill. App. 3d 35, 38, 356 N.E.2d 639, 642.) The wording or form of the document, no matter how all-encompassing the language appears to be, will not preclude it from being set aside. (*Reede v. Treat*, 62 Ill. App. 2d 120, 129, 210 N.E.2d 833, 838 (1965); *Ruggles*, 25 Ill. App. 2d 1, 13, 165 N.E.2d 733, 739-40.) Further, our courts do not distinguish between: (1) separate and distinct injuries which were not known or considered at the time the settlement was approved, and (2) known injuries resulting in unknown and unexpected consequences. *Scherer v. Ravenswood Hospital Medical Center*, 21 Ill. App. 3d 637, 639, 640, 316 N.E.2d 98, 101 (1974).

■■ In order to avoid the document, the mistake must be mutual, material to the transaction, and affect its substance. (See *Martin*, 104 Ill. App. 2d 462, 476, 244 N.E.2d 851, 854; *Welsh*, 75 Ill. App. 2d 305, 311-12, 221 N.E.2d 106, 109-10; *Fraser v. Glass*, 311 Ill. App. 336, 342-43, 35 N.E.2d 953, 956 (1941).) Accordingly, a unilateral or self-induced mistake is

insufficient to set the document aside.[1] (*Martin*, 104 Ill. App. 2d 462, 467, 244 N.E.2d 851, 854; *Welsh*, 75 Ill. App. 2d 305, 311-12, 221 N.E.2d 106, 109; *Ogren*, 39 Ill. App. 3d 620, 622, 350 N.E.2d 249, 251; *Wascher v. Lundeen*, 32 Ill. App. 2d 239, 245, 177 N.E.2d 440, 443 (1961).) A mistake will not be considered self-induced if the plaintiff acted reasonably under all the circumstances of the case. (*Reede*, 62 Ill. App. 2d 120, 131, 210 N.E.2d 833, 839; see also *Fraser*, 311 Ill. App. 336, 342, 343, 35 N.E.2d 953, 956.) Frequently, the defendant will blame the plaintiff or others for his mistaken belief. However, the source of the mistaken information upon which the defendant relied is not controlling upon the issue of whether the document should be set aside. *Reede*, 62 Ill. App. 2d 120, 131, 210 N.E.2d 833, 839; *Ruggles*, 25 Ill. App. 2d 1, 20, 165 N.E.2d 733, 743.

Over the years, a trend has developed to apply a doctrine of liberality with respect to setting aside settlement agreements which subsequently prove to be grossly unfair and unjust. (*Ruggles*, 25 Ill. App. 2d 1, 12, 165 N.E.2d 733, 739; see *Kiest v. Schrawder*, 56 Ill. App. 3d 732, 735, 372 N.E.2d 442, 443 (1978).) This development has progressed to the stage where it recently has been stated that the "trend is to set aside releases of personal injury claims in a situation where the facts, when finally known, present an unconscionable result," and that the question in these cases is simply "whether the result * * * is unconscionable." *Florkiewicz v. Gonzalez*, 38 Ill. App. 3d 115, 120, 347 N.E.2d 401, 405 (1976); *Kiest*, 56 Ill. App. 3d 732, 735, 372 N.E.2d 442, 443.

It is obvious, however, that this so-called liberal trend must exist in harmony with a policy of encouraging the settlement of personal injury claims and the forbearance of litigation entirely. (*Welsh v. Centa*, 75 Ill. App. 2d 305, 313, 221 N.E.2d 106, 110 (1966); *Thomas v. Hollowell*, 20 Ill. App. 2d 288, 291, 155 N.E.2d 827, 829 (1959); *Clancy v. Pacenti*, 15 Ill. App. 2d 171, 177, 145 N.E.2d 802, 805 (1957).) It is especially important to maintain this latter principle in our progressively litigious society where cases are mounting in our overburdened courts. If a release or covenant is to be lightly disregarded, then the peaceful settlement of claims becomes realistically impossible. Prospective litigants cannot or will not negotiate

---

[1] *Munnis v. Northern Hotel Co.*, 237 Ill. App. 50, 55 (1925), states in the form of *obiter dictum* that a unilateral mistake is sufficient to set aside a release. *Sullivan v. Elgin, Joliet & Eastern Ry. Co.*, 331 Ill. App. 613, 73 N.E.2d 632 (1947) (abstract), relying upon the *obiter dictum* in the *Munnis* case, states that the mistake need not be mutual. All the other Illinois cases, however, hold or follow the rule, which appears to be firmly established, that the mistake must be mutual and that a unilateral or self-induced mistake is insufficient to set aside the document; *e.g.*, *Welsh*, 75 Ill. App. 2d 305, 311, 312, 221 N.E.2d 106, 109 (1966), and the other cases cited *supra*. Also, compare the statement of the United States Supreme Court in *Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625, 630, 92 L. Ed. 242, 246, 68 S. Ct. 296, 298 (1948): "One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, * * * *by a mutual mistake under which both parties acted.*" (Emphasis supplied.)

settlements if the law will not give effect to their executed settlement of claims. (*Thomas*, 20 Ill. App. 2d 288, 291, 155 N.E.2d 827, 829; *Welsh*, 75 Ill. App. 2d 305, 313, 221 N.E.2d 106, 110.) It is perhaps for these reasons that public policy favors the peaceful and voluntary resolution of claims; where there appears to have been such a resolution by virtue of a release or covenant, a presumption of its validity is created. *Blaylock v. Toledo*, 43 Ill. App. 3d 35, 37, 356 N.E.2d 639, 641 (1976).

In order to maintain a liberal perspective and at the same time preserve a field of free action within which parties may compromise their differences with substantial assurance that the matter will not arise again, each case must be examined so that *all* the circumstances are taken into consideration to determine the intention of the parties at the time the document was executed. (See *Clancy*, 15 Ill. App. 2d 171, 177, 145 N.E.2d 802, 805; *Welsh*, 75 Ill. App. 2d 305, 313, 221 N.E.2d 106, 110.) When this is done, the document may be set aside if it was entered into under a mutual mistake of fact which is material to the transaction and affects its substance. In a situation where the facts, when finally known, present an unconscionable result, the document should be set aside as being entered into under a mutual mistake of fact material to the transaction and affecting its substance. This is consistent with the modern trend of cases. (*Florkiewicz*, 38 Ill. App. 3d 115, 120, 121, 347 N.E.2d 401, 405.) It is also in accord with the purpose of the law, which is to do justice under the circumstances of each case. See *Ruggles v. Selby*, 25 Ill. App. 2d 1, 12, 165 N.E.2d 733, 739.

The defendant contends that the covenant should not be set aside because the $250 was paid and accepted on the basis that there was no apparent liability in the case against the present defendant. The rationale of the defendant's contention is that the nature and extent of the injury is immaterial because it is not part of the consideration. We disagree. The controlling feature in a personal-injury settlement agreement is the injury understood and recognized to have been suffered and it is, therefore, a material part of the consideration. The defendant's argument to sustain the validity of the covenant is untenable.

The validity of releases and covenants has been decided at various stages and through different judicial procedures. In *Bowman v. Illinois Central R.R. Co.*, 11 Ill. 2d 186, 211, 142 N.E.2d 104, 120 (1957), the court said this issue should be decided with all the other issues, including liability and damages, in a single jury trial. (Accord, *Florkiewicz v. Gonzalez*, 38 Ill. App. 3d 115, 347 N.E.2d 401 (1976).) In *Hudson v. Thies*, 35 Ill. App. 2d 189, 182 N.E.2d 760 (1962), *aff'd*, 27 Ill. 2d 548, 190 N.E.2d 343 (1963), a separate jury was used to determine the validity of the release. In other cases, the trial court judge conducted a separate hearing to determine the validity of the document and, if invalid, the case on the

merits was submitted to a jury. (*Reede v. Treat*, 62 Ill. App. 2d 120, 210 N.E.2d 833 (1965); *Ruggles v. Selby*, 25 Ill. App. 2d 1, 165 N.E.2d 733 (1960); *Child v. Lincoln*, 51 Ill. App. 2d 76, 200 N.E.2d 751 (1964).) Another judicial procedure was used in *Thomas v. Hollowell*, 20 Ill. App. 2d 288, 155 N.E.2d 827 (1959), where the court entered a judgment on the pleadings. Other cases have decided the validity of the document by summary judgment procedure. (*Welsh v. Centa*, 75 Ill. App. 2d 305, 221 N.E.2d 106 (1966); *Brackeen v. Milner*, 88 Ill. App. 2d 50, 232 N.E.2d 241 (1967).) Still other cases have been decided in the same manner adopted in the present case, pursuant to a motion to dismiss under section 48 of the Civil Practice Act. *Martin v. Po-Jo, Inc.*, 104 Ill. App. 2d 462, 244 N.E.2d 851 (1969); *Scherer v. Ravenswood Hospital Medical Center*, 21 Ill. App. 3d 637, 316 N.E.2d 98 (1974); *Kiest v. Schrawder*, 56 Ill. App. 3d 732, 372 N.E.2d 442 (1978).

■■ Section 48 of the Civil Practice Act affords a means of obtaining at the outset of a case a summary disposition of issues of law or easily proved issues of fact. (*Millan v. Seibt*, 49 Ill. App. 3d 506, 507, 364 N.E.2d 521, 523 (1977); *Lougham Cabinet Co. v. C. Ider & Sons, Inc.*, 46 Ill. App. 3d 873, 876, 361 N.E.2d 379, 382 (1977); see Historical and Practice Notes, Ill. Ann. Stat., ch. 110, par. 48 (Smith-Hurd 1968).) It is clear that such motions admit facts well-pleaded, but do not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. (*Martin*, 104 Ill. App. 2d 462, 468, 244 N.E.2d 851, 855.) If the record establishes that a genuine and material question of fact does not exist, the motion to dismiss should be allowed; but if there is a genuine and material question of fact and a jury demand, the motion should be denied. (*Pennington v. Jones*, 46 Ill. App. 3d 65, 67, 360 N.E.2d 566, 567 (1977).) In making his ruling, the trial court judge may not weigh the evidence. *Greenstein v. Nogle*, 5 Ill. App. 3d 594, 599, 283 N.E.2d 492, 496 (1972).

■■ The defendant, of course, has the burden of proving the affirmative defense relied upon in a motion to dismiss. (*Stockton v. Mendoza*, 46 Ill. App. 3d 108, 110, 360 N.E.2d 561, 562 (1977).) If, however, the defendant's motion is based upon a release or covenant, valid on its face, then the burden shifts to the plaintiff to sufficiently allege and prove that a material issue of fact exists which would invalidate the agreement. (*Blaylock v. Toledo, Peoria & Western R.R. Co.*, 43 Ill. App. 3d 35, 37, 38, 356 N.E.2d 639, 641 (1977); see *Welsh v. Centa*, 75 Ill. App. 2d 305, 312, 221 N.E.2d 106, 110 (1966); *Martin*, 104 Ill. App. 2d 462, 467, 244 N.E.2d 851, 854 (1969); *Ogren v. Graves*, 39 Ill. App. 3d 620, 623, 350 N.E.2d 249, 251 (1976).) The parties may file affidavits, counteraffidavits, interrogatories, documents, and deposition transcripts; in addition, they may call witnesses to testify during the hearing before the trial court judge. (See

*Sierens v. Clausen,* 60 Ill. 2d 585, 328 N.E.2d 559 (1975); *White Way Sign & Maintenance Co. v. Montclare Lanes, Inc.,* 42 Ill. App. 3d 199, 355 N.E.2d 632 (1976); *Kiest v. Schrawder,* 56 Ill. App. 3d 732, 372 N.E.2d 442 (1978); *Martin v. Po-Jo, Inc.,* 104 Ill. App. 2d 462, 244 N.E.2d 851 (1969); Ill. Ann. Stat., ch. 110, par. 48, Supplement to Historical and Practices Notes (Smith-Hurd 1978).) The plaintiffs, of course, did not have the testimony of the decedent available, but this does not mean that the *circumstances* presented did not raise a material issue of fact which would invalidate the agreement. In a case involving the conduct or intention of a decedent, the court should assay all the circumstances to reach a proper conclusion.

■■ If the injury that the decedent received in this case was so serious as to be a proximate cause of his death, the payment of $250 as consideration for the covenant not to sue is unconscionable. It is also inarguable that the amount paid for the covenant does not indicate an intent on the part of either the decedent or the defendant to redress any injury other than the apparent minor injury the decedent was aware of on the morning of the accident. Thus, if the decedent's injury was a proximate cause of his death, the covenant was entered into under a mutual mistake of fact as to the nature and extent of the injury received. The mistake would be mutual, material to the transaction, and affect its substance. (*Fraser,* 311 Ill. App. 336, 342-43, 35 N.E.2d 953, 956.) Consequently, the plaintiffs have proven the existence of a material question of fact sufficient to invalidate the agreement.

Viewing the record under the law relevant to the determination of the validity of settlement agreements in personal injury actions, and in accordance with the law applicable to motions to dismiss under section 48 of the Civil Practice Act, we believe, for the reasons stated, the defendant's motion to dismiss should have been denied.

■■ After the motion to dismiss was granted in the trial court, the plaintiffs filed a petition to vacate that order. In their petition, the plaintiffs requested that the matter be transferred to the chancery division of the circuit court of Cook County. The judicial article embodied in the Illinois Constitution of 1970 has abolished the distinction between courts of law and equity so that our circuit courts have original jurisdiction of all justiciable matters. The divisions of the circuit court of Cook County, law division *vis-a-vis* chancery division, are for administrative purposes only and no longer constitute jurisdictional barriers. (*Power Electric Contractors, Inc. v. Maywood-Proviso State Bank,* 60 Ill. App. 3d 685, 687, 377 N.E.2d 142, 143 n.1. (1978); *Peter G. Georges, Inc. v. Feldon Building Corp.,* 61 Ill. App. 3d 631, 634, 377 N.E.2d 1102, 1105 (1978); *Olsen v. Karwoski,* 68 Ill. App. 3d 1031, 386 N.E.2d 444 (1979); see H. Fins, Illinois Appellate Practice Under the New Constitution 110-19 (2d ed.

1977).) Since a trial court judge in the law division has jurisdiction to hear all the issues involved in this matter, the case should be heard in its entirety in the law division. *Georges*, 61 Ill. App. 3d 631, 634, 377 N.E.2d 1102, 1105; *Olsen*, 68 Ill. App. 3d 1031, 1034, 386 N.E.2d 444, 445.

The order granting the defendant's motion to dismiss is, therefore, reversed. The case is remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

SIMON, P. J., and McGILLICUDDY, J., concur.