DORIS M. ANTAL, Plaintiff-Appellant, v. MATTIE L. TAYLOR, Defendant-Appellee (Tibor Antal, Counterdefendant).

Fourth District   No. 4—85—0413

Opinion filed May 21, 1986.—Rehearing denied October 1, 1986.

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., and Vernon H. Houchen, both of Decatur (Jeffrey C. Taylor, of counsel), for appellant.

Francis J. Lynch, of Law Offices of Studach & Lynch, of Springfield, for appellee Mattie L. Taylor.

James V. Mancuso, Jr., of Mancuso & Tietz, of Decatur, for appellee Tibor Antal.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff, Doris Antal, appeals from an order of the circuit court of Macon County dismissing her personal injury complaint.

Plaintiff filed suit against Mattie L. Taylor, and defendant Taylor filed an answer and a counterclaim against plaintiff's husband, Tibor Antal, who had been driving plaintiff's car at the time of the accident. Defendant Taylor then filed a motion to dismiss the complaint on the ground that plaintiff had executed a release which was a bar to any cause of action against defendant. By agreement of the parties, the issue of the legal effect of plaintiff's general release was submitted to the trial court on the pleadings, affidavits, and plaintiff's discovery deposition.

According to the record on appeal, on December 23, 1982, plaintiff was a passenger in the front seat of her car, which was being driven by her then fiance, Tibor Antal, in Decatur. A car driven by

defendant, Mattie L. Taylor, made a left turn in front of plaintiff's car, causing a collision in which plaintiff was thrown forward. She struck her forehead on the rearview mirror and hit her knees against the glove compartment. Plaintiff did not seek medical treatment at the time of the accident, and although she had a headache and bruised knees, she was able to continue her employment as a laborer at Archer Daniels Midland, where her work involved shoveling wet beans into a wheelbarrow and wheeling the load to another part of the plant. The headache and other body pain went away after two or three days.

About two weeks later, plaintiff's work assignment was changed, and she began painting the inside of an industrial building. The work required a lot of overhead painting and reaching. She began to notice stiffness in her right shoulder and neck which she at first attributed to the change in her work. Gradually she began to experience some pain in addition to the stiffness, and near the end of February she reported that pain to her family physician during an appointment to seek treatment for bronchitis. Her doctor told her she was probably overworked, and he gave her a shot of a vitamin.

Her pain worsened, and on March 1, 1983, she saw an orthopedist who ordered a cervical collar and cervical traction treatments. After three weeks, he told her she did not need any more treatment. She then began to have numbness in her right hand and fingers, and so she returned to her family physician. He hospitalized plaintiff and referred her to an orthopedic surgeon who diagnosed a ruptured disc requiring surgery. Plaintiff underwent a laminectomy on April 21, 1983. She incurred doctor and hospital bills totalling $5,850 and missed five months' work.

At the time of the accident, plaintiff's car was substantially damaged. Defendant pleaded guilty to a traffic charge arising out of the accident, and plaintiff requested defendant's insurance company to pay for the damage to her car. About February 4, 1983, while plaintiff's car was still in the garage, she was presented with a general release to sign in return for payment of $2,412.29, the exact amount of her car-repair bill. She and her husband to be read the release and discussed the fact that she would not be able to pay for her car repairs and recover the use of her car until both she and Tibor had signed the release. They decided to sign it.

The printed form recited:

> "It is expressly understood and agreed that this release and settlement is intended to cover and does cover not only all known injuries, losses and damages but any future injuries,

losses and damages not now known or anticipated but which may later develop or be discovered, including all the effects and consequences thereof ***."

In her deposition, plaintiff stated that she had understood that the release applied only to the damage to her car and that it was not her intention to release possible personal injury claims as well. She also said that she did not know that the stiffness and soreness in her shoulder and arm were the result of the accident until she saw the orthopedist on March 1, 1983.

The trial court found that plaintiff failed to establish either a mutual mistake of fact or fraud, that both plaintiff and defendant knew that the plaintiff had pain after the accident, that plaintiff failed to seek medical attention after the accident and prior to the execution of her release, that she and her husband to be both read the release prior to signing it, and that plaintiff failed to exercise reasonable care or diligence in discerning the nature of her injury. The court then granted defendant's motion to dismiss. Plaintiff has appealed.

For the purpose of this appeal, there is no question concerning defendant's liability. The sole issue is whether the release should be a bar to plaintiff's cause of action. Plaintiff contends that the trial court's finding of no mutual mistake of fact by the parties as to the existence and extent of plaintiff's injuries was contrary to the manifest weight of the evidence and that the trial court erred in permitting as unconscionable hardship to the injured party.

Illinois courts have had many occasions to consider the question of setting aside releases allegedly based on a mistake of fact concerning the nature and extent of the injuries suffered by the plaintiff in a personal injury suit. Many of those cases were summarized in *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 387 N.E.2d 878, where the court discussed the tension between a policy of encouraging the settlement of personal injury claims and a policy of setting aside releases which subsequently prove to be grossly unfair and unjust. The court said:

"[E]ach case must be examined so that *all* the circumstances are taken into consideration to determine the intention of the parties at the time the document was executed. [Citations.] When this is done, the document may be set aside if it was entered into under a mutual mistake of fact which is material to the transaction and affects its substance. In a situation where the facts, when finally known, present an unconscionable result, the document should be set aside as being entered into under a mutual mistake of fact material to the transaction and

affecting its substance. This is consistent with the modern trend of cases. [Citation.] It is also in accord with the purpose of the law, which is to do justice under the circumstances of each case." (Emphasis in original.) (70 Ill. App. 3d 106, 113, 387 N.E.2d 878, 883.)

This court followed *Meyer v. Murray* in *Newborn v. Hood* (1980), 86 Ill. App. 3d 784, 408 N.E.2d 474, where Justice Stouder, speaking for the court, said:

"Thus, it is clear that all the facts, including those which become known after the release has been executed, must be considered in determining whether there was a mutual mistake of fact and whether or not the settlement was unconscionable." 86 Ill. App. 3d 784, 786, 408 N.E.2d 474, 476.

Here there is no dispute that plaintiff had the burden of establishing that a mutual mistake occurred and that the settlement of $2,412.29 was unconscionable. It is also not disputed that the amount paid by defendant represented the exact amount of the property damage suffered by plaintiff. Plaintiff has established that she incurred medical expenses in excess of $5,000 and that she lost five months' work for which she would have been paid at the rate of $8.25 per hour for 40 hours or more each week. It thus is clear that the settlement was grossly unjust and one that plaintiff would not have agreed to had she known the true extent of her injuries.

The trial court expressly found that both plaintiff and defendant knew that plaintiff had pain after the accident. This finding was presumably based on an accident report signed by plaintiff on January 12, 1983, which stated that both she and the driver hit their heads and had headaches and that she hit both knees. In her discovery deposition, plaintiff further explained that she suffered a headache for two or three days, that she was able to return to work and to do heavy physical labor without pain, and that she did not develop pain in her shoulder and arm until after the release was signed. Therefore, neither plaintiff nor defendant could have known the pain caused by the back injury before the settlement of the claim. The court erred in finding to the contrary.

The court also found that plaintiff failed to seek medical attention after the accident and prior to the execution of the release and that she failed to exercise reasonable care or diligence in discerning the nature of her injury. These findings are also contrary to the manifest weight of the evidence. As indicated above, plaintiff sought medical treatment as soon as symptoms of the injury became noticeable. Plaintiff is required to use no more than reasonable diligence in

procuring treatment. (*Fraser v. Glass* (1941), 311 Ill. App. 336, 35 N.E.2d 953.) She was not required to seek medical attention before the symptoms became manifest.

■ Under the law of Illinois, where there was a mistake as to the scope and extent of the known injuries, a clause in the release covering unanticipated consequences should not be a bar to setting aside the release. (*Reede v. Treat* (1965), 62 Ill. App. 2d 120, 210 N.E.2d 833.) Without dispute, plaintiff was compensated only for her car repairs in consideration for execution of the release. It is hard to imagine a situation where a mutual mistake of fact could be more clearly established.

Accordingly, we conclude that the release in this case was not a bar to plaintiff's cause of action for personal injuries. The trial court erred in granting the motion to dismiss. We reverse the dismissal order and remand for further proceedings.

Reversed and remanded.

WOMBACHER and HEIPLE, JJ., concur.