Albert BAKER, Plaintiff-Appellant,

v.

CHICAGO, FIRE & BURGLARY DETEC-
TION, INC., Defendant-Appellee.

No. 72–1983.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 16, 1973.

Decided Nov. 30, 1973.

Wayne B. Giampietro, Chicago, Ill.,
for plaintiff-appellant.

George W. Johnson, Glen Ellyn, Ill.,
for defendant-appellee.

Before SWYGERT, Chief Judge,
CASTLE, Senior Circuit Judge and
SPRECHER, Circuit Judge.

SPRECHER, Circuit Judge.

This appeal raises the question of
whether the instant action commenced
under Title VII of the Civil Rights Act
of 1964 was properly disposed of on a
motion for summary judgment.

I

Plaintiff filed a complaint with the
Equal Employment Opportunity Com-
mission on June 3, 1971 alleging that on
or about June 1, 1971 he had been dis-
charged from his employment with Chi-
cago Fire & Burglary Detection, Inc.
(the "company") by reason of the fact
that he was a member of the Jewish re-
ligion.

On September 1, 1971, the company
issued a check to plaintiff in connection
with a proceeding before the State of Il-
linois Department of Labor, Wage Claim
Division (File No. 71–1065) for wages
allegedly earned by plaintiff prior to his
discharge. The Wage Claim Division
forwarded the check to plaintiff stating

that the sum was "to cover payment of your Wage Claim filed in this office against your former employer" (Record, 74). The check was made out in the amount of $28.68 ($36 less deductions); the reverse side contained a typewritten legend reciting the following: "Full Payment and Settlement of Any and All Claims Against Chicago Fire and Burglary Detection, Inc." Plaintiff had not communicated with the company concerning this release and had no prior knowledge that it would appear on the check. Plaintiff conversed with an employee of the Wage Claim Division concerning the significance of the legend and was advised that it would have no effect on any other cause of action he might have against his company. Consequently, plaintiff subsequently negotiated the check.

The EEOC issued to plaintiff a Notice of Right to Sue on January 3, 1972 and suit was commenced on January 10, 1972. Counsel for plaintiff was appointed by the district court on February 10, 1972.

The complaint was based on 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981. The company's answer denied that the plaintiff had been discharged because of his religion and raised the affirmative defense of not being an employer within the meaning of 42 U.S.C. § 2000e(b). The company then filed a motion for summary judgment with supporting affidavits on the basis that the 42 U.S.C. § 2000e claim failed for lack of jurisdiction and the 42 U.S.C. § 1981 claim had been satisfied and released. Plaintiff's reply to the motion for summary judgment denied that his negotiation of the check was intended to have the effect of releasing his civil rights claim and further raised the procedural irregularity of the company pleading the release for the first time in a motion for summary judgment.[1]

In granting summary judgment in favor of the company, the district court found that the Section 2000e claim failed because the company did not employ 25 or more persons. Plaintiff does not appeal this determination. As to the Section 1981 claim, the release was given force and effect on the basis of the following reasoning:

"This language seems clear enough, and allows no exceptions. Plaintiff does not contend that he did not know of his § 1981 claim when he signed. In fact his brief states that he had proceedings pending before the F.E. P.C. at this time. Plaintiff merely contends that the Illinois Department of Labor told him that the release would not affect claims other than the wage claim which he was then settling.

"Plaintiff has no right to rely on the advice of a third party to the prejudice of defendant. If the defendant had misled him or otherwise practiced fraud or duress on him, he might have a case. But absent such circumstances, he cannot be allowed to set aside a general release every time he or his lawyer files a new lawsuit against the released party. Lawrence v. Muter, 171 F.2d 380 (7th Cir. 1948)."

Plaintiff argued that he had a right to rely on the advice of the Wage Claim Division and it was reasonable for him to do so, that the check represented only wages due and was not intended to compensate him for his civil rights claims, and that there was no intention on his part that the release be effective generally. Consequently, under Illinois law the release would not bar the instant action.

## II

Federal Rule of Civil Procedure 8(c) provides in pertinent part that

---

[1] "Finally, whether this release is valid or not is an affirmative defense, which must be pleaded and proved by defendant, and is a matter of fact to be determined by the trier of fact upon a trial of the cause." Record, 94.

"The release allegedly signed and accepted by plaintiff is clearly not grounds upon which to grant the Motion for Summary Judgment. At most it is an affirmative defense which defendant might raise at the time of trial." Record, 95–96.

"[i]n pleading to a preceding pleading, a party shall set forth affirmatively . . . release . . . and any other matter constituting an avoidance or affirmative defense." [2]

Here, the company, subsequent to answer, supported a motion for summary judgment by raising the affirmative defense of release by affidavits, which defense was not raised in its answer, In Roe v. Sears, Roebuck &· Co., 132 F.2d 829 (7th Cir. 1943), where defendant answered, then subsequently set up the defense of statute of limitations for the first time by way of affidavits in support of a motion for summary judgment, the court set forth the principle applicable in this Court as follows:

> "When ·defendant moved for summary judgment it had filed an answer, the legal effect of which was a waiver of its defense of the statute of limitations. It could not, therefore, *unless relieved from its default,* revive the defense it had waived. We need not consider when a defendant may be excused from its failure to plead the statute of limitations, and be permitted to amend its answer, because the instant case presents no such question. The defendant herein sought no such relief." 132 F.2d at 832 (emphasis added).[3]

However, since the plaintiff does not appear to have been unfairly disadvantaged by the company's failure to plead the defense in his answer, we do not reverse the lower court on this ground alone.

### III

In determining the operational effect of a release, the Illinois courts have considered a combination of factors: [4] the intentions of the parties, the adequacy of the consideration, the care and diligence exercised by mistaken parties, and the possibility of injustice to the party seeking to enforce the release. Here, the company has not contended that the payment provided any compensation for the alleged civil rights injury, or that the plaintiff intended to sign a release covering the instant action, or that its belief that the company had become a party to a general release has been detrimental to its interest. At best, the company alleged that the plaintiff unreasonably relied on the advice of a third party which advice caused him to endorse the check.

It is not disputed that the plaintiff received no consideration and the company suffered no detriment. Under such circumstances, the same principles applied to discharge of an existing obligation are appropriate where assertion of a claim is involved. The company did not cite and we can not find an Illinois case upholding a release unsupported by consideration.

> "A valid release must be based upon a consideration before it can be efficacious in a court of law. Where the promisor receives no benefit and the promisee suffers no detriment the whole transaction is in its nature a *nudum pactum.*"

Toffenetti v. Mellor, 323 Ill. 143, 148, 153 N.E. 744, 746 (1926); *accord,* Sullivan v. Elgin, J. & E. R. Co., 331 Ill.App. 613, 73 N.E.2d 632 (1947) (release set aside where the only consideration was for time lost because of the injury).[5]

The absence of consideration is also significant as it relates to the intentions

---

2. *See generally* 2A J. Moore, Federal Practice ¶ 8.27 [2] (1972).

3. *See also* Wagner v. Fawcett Publications, 307 F.2d 409, 412 (7th Cir. 1962); cert. denied, 372 U.S. 909, 83 S.Ct. 723, 9 L.Ed.2d 718 (1963).
   The appellee could have availed himself of the amendment procedures liberally available under Fed.R.Civ.P. 15(a).
   In a proper case, where a motion for summary judgment is supported by matters outside the pleadings, the court could deem the answer amended to conform to the proof offered. Seaboard Terminals Corp. v. Standard Oil Co., 104 F.2d 659, 660 (2nd Cir. 1939) (dictum).

4. Both parties have cited and relied upon Illinois law, where the transactions at issue. occurred.

5. The district court cites Lawrence v. Muter Co., 171 F.2d 380 (7th Cir. 1949) in support of the validity of the release. In that case

of the parties. Plaintiff argued that he did not intend to agree to a general release; the company did not dispute this argument. We do not believe that under the applicable standard the appellant acted unreasonably.[6] The Department of Labor is not only empowered to investigate and attempt to adjust wage claims, but also to prosecute such claims if necessary. Ill.Rev.Stat. ch. 48, § 39*l*. In order to cash checks in amounts such as $28.68, reasonable men, especially those whose resources are limited,[7] do not normally seek the advice of an attorney. Furthermore, the company could reasonably have surmised that the plaintiff might well be unaware of the effect of the language where it made no attempt to communicate the result it was attempting to achieve.[8]

The company contended that at most the mistake was unilateral (*but see* note 8, *supra*) and that a release will not be voided unless the mistake is mutual.

"It is true the Illiniois cases contain dicta that in some cases a release may be set aside because of a unilateral mistake, but no explanation is given of the type of case in which such a principle would be applied."

Thomas v. Hollowell, 20 Ill.App.2d 288, 289, 155 N.E.2d 827, 828 (1959).[9] From a close reading of the Illinois cases, we have concluded that such a principle would be applied in the instant case due to the absence of consideration, intention, and like factors present in cases upholding the release. The principle is particularly appropriate where the evidence does not suggest that any injustice will be done to the party seeking enforcement. In any event, we are not convinced that the Illinois courts have not in fact applied the principle. *Compare* Ruggles v. Selby, 25 Ill.App.2d 1, 165 N.E.2d 733 (1960) *with* Thomas v. Hollowell, 20 Ill.App.2d 288, 155 N.E.2d 827 (1959).[10]

the *Toffenetti* holding was discussed and found inapplicable.

"The plaintiff seeks to avoid the consequences of the release on the ground that it was not supported by consideration, invoking the rule that a discharge of an existing obligation or right of action by release requires consideration. Toffenetti v. Mellor . . . We disagree . . . with the contention that this release was void for want of consideration. . . . [since] the increase in compensation ties in with and supplies valid consideration for the release." 171 F.2d 384–385.

6. "It is not enough to prevent relief . . . that the party might, had he done all within his power, have ascertained the truth but only reasonable diligence is required." Frazer v. Glass, 311 Ill.App. 336, 342, 35 N.E.2d 953, 956 (1941).

7. Counsel was appointed for appellant in the instant action.

8. This, when considered in conjunction with the absence of consideration, raises a strong inference that the company had prior notice that the plaintiff would not endorse the check absent a mistake, thereby precluding an intention on its part as well that the release was to be general.

9. See Fraser v. Glass, 311 Ill.App. at 343–344, 35 N.E.2d 953 at 956.

10. "Statements are exceedingly common, both in texts and in court opinions, that relief

will not be given on the ground of mistake unless the mistake is 'mutual.' Such a broad generalization is misleading and untrue. Seldom is it accompanied by either definition or analysis. A study of thousands of cases is not necessary to convince us that to err is human, both in the sense of having mistaken ideas and in the sense of performing acts that are evil or unwise. But such a study will show that human mistakes are of great variety in kind with a great variety of causes, that they have a great variety of results, and that the juristic effects vary as the combinations of factors vary.

"Cases do not always submit readily to be classified with either 'mutual mistake' or 'unilateral mistake.' And even when they do submit, the solution does not mechanically follow in accordance with a separate set of rules for each class. Very often relief has been and will be, granted where the mistake is unilateral. And relief is not necessarily granted, even though the mistake is mutual. It depends very materially upon the form of relief sought. . . .

\* \* \* \* \*

" . . . Statements are very numerous to the effect that the mistake of only one of the parties to a contract is not a ground for relief either at law or in equity. Such a statement can be accepted only in case the party seeking relief proves no more than that his action was induced by his erroneous thought. The statement will seldom be found in cases in which relief is granted;

It is true that the law favors compromise and settlement. The courts do not create compromises they only enforce them when such was the intention of the parties at the time the contract was entered into.

On the undisputed facts, we hold as a matter of law that the release does not operate as a bar to the § 1981 claim. Accordingly, this cause is remanded with directions to proceed with the civil rights claim with the affirmative defense of release stricken.

Reversed and remanded.

Timbers, Circuit Judge, filed an opinion dissenting in part.

in the cases refusing relief and making the statement as a reason for so doing, the court has always considered and weighed the additional factors that accompanied the mistake." Corbin, Contracts § 608, at 556–557 (One Vol.Ed.1952).