Burt A. JORDAN, Plaintiff, Appellant,

v.

Thomas KELLY, M.D., Defendant,
Appellee.

Arthur JORDAN, etc., et al.,
Plaintiffs, Appellants,

v.

Patrice C. MACK, M.D., Defendant,
Appellee.

Arthur JORDAN, etc., et al.,
Plaintiffs, Appellants,

v.

Thomas KELLY, M.D., Defendant,
Appellee.

Nos. 83–1801, 83–1802 and 83–1803.

United States Court of Appeals,
First Circuit.

Argued Jan. 3, 1984.

Decided Feb. 10, 1984.

Robert B. Mann, Providence, R.I., with whom Robert B. Mann Law Office, Providence, R.I., was on brief, for plaintiffs, appellants.

Robert C. Corrente, Providence, R.I., with whom Robert W. Lovegreen, and Hinckley & Allen, Providence, R.I., were on brief, for defendants, appellees.

Before COFFIN, ALDRICH and BREYER, Circuit Judges.

COFFIN, Circuit Judge.

Plaintiffs Dr. Burt Jordan and his son, Arthur, appeal from a grant of summary judgment to defendants, psychiatrists Patrice Mack and Thomas Kelly. In three consolidated actions, the Jordans alleged that they had suffered damage from the defendants' unauthorized disclosure of confidential medical information in violation of Rhode Island's Confidentiality of Health Care Information Act (The Act), R.I.G.L. 5–37.3–1 to 5–37.3–11 (enacted by P.L.1978, ch. 297, § 1).[1]

1. Both plaintiffs are residents of Rhode Island. Dr. Mack and Dr. Kelly are residents of Florida.

The Jordans initially filed all three cases in Rhode Island superior court, and Mack and

The cases arise out of a protracted custody dispute between Dr. Jordan and his former wife, Ann Jordan (now Ann Asbell). In February, 1978, while Dr. and Mrs. Jordan still lived together in Florida, Dr. Mack conducted various psychiatric tests on the Jordans' son Arthur. In September, 1978, a Florida court order dissolved the Jordan marriage and awarded Mrs. Jordan temporary custody of Arthur and his sister Emily. In February 1979, Dr. Mack testified on Mrs. Jordan's behalf at a custody proceeding in a Florida court. The judge in that proceeding then appointed Dr. Kelly to conduct an independent psychiatric review of both children and the parents. Dr. Kelly's written report to the court supported Dr. Mack's recommendation that Mrs. Jordan should have custody of both children. Soon thereafter and prior to the court's final decree on August 16, 1979, awarding Mrs. Jordan permanent custody of both children, Dr. Jordan took both children to live with him in Rhode Island.

On August 14, 1979, Dr. Jordan instituted a new custody proceeding in a Rhode Island family court. At all of the family court hearings relevant to this case, an attorney represented Dr. Jordan and an attorney acting as court-appointed guardian ad litem represented Arthur. At the August 23 family court hearing, Dr. Jordan called Dr. Kelly as an adverse witness and introduced certain of Dr. Kelly's records into evidence. At no time during the hearing did counsel for either Dr. Jordan or Arthur Jordan object to Dr. Kelly's testimony on the grounds that it violated their privilege of confidentiality under the Act. On February 8, 1980, Dr. Kelly again testified in the Rhode Island family court and again neither counsel for Dr. Jordan and Arthur Jordan objected to Dr. Kelly's testimony.

On February 11, 1980, Dr. Mack testified in the family court proceeding. Dr. Jordan's counsel cross-examined Dr. Mack and introduced as exhibits some of Dr. Mack's office notes regarding evaluations of Dr. Jordan and Arthur Jordan. Neither Dr. Jordan's attorney nor Arthur Jordan's attorney objected to Dr. Mack's testimony on the basis of a privilege of confidentiality under the Act. The Rhode Island family court awarded Mrs. Jordan custody of Emily and awarded Dr. Jordan custody of Arthur.

Dr. Jordan and Arthur Jordan then instituted these actions in Rhode Island superior court. After removal and consolidation, the district court granted summary judgment for defendant psychiatrists Kelly and Mack. The district court found that no genuine issue of material fact existed regarding the Jordans' waiver of any privilege of confidentiality they may have had under the Act. The court assumed, for the purposes of deciding the motion for summary judgment on the waiver issue, that Dr. Kelly and Dr. Mack were subject to the requirements of the statute, that the "child abuse" exemption to the physician-patient privilege, R.I.G.L. § 5–37.3–4(b)(4), did not apply, and that the plaintiffs had not actually given their consent to the disclosures. But even assuming that Dr. Kelly and Dr. Mack had violated the statute, the court ruled that the Jordans had waived their statutory privilege by failing to object to the testimony given by the doctors at the family court hearing.

The facts underlying the district court's finding of waiver are undisputed. Prior to consolidation of these cases, in response to Dr. Mack's request for admissions, plaintiffs admitted that they both had counsel present during Dr. Mack's family court testimony, that Dr. Jordan's counsel had cross-examined Dr. Mack and had introduced into evidence certain of her office notes, and that counsel for Dr. Jordan and Arthur Jordan had not objected to Dr. Mack's testimony based on violation of the Act.

The Jordans did not respond to Dr. Kelly's request for admissions, so the Jordans thereby admitted the statements made therein, *see Luick v. Graybar Electric Co.,* 473 F.2d 1360, 1362 (8th Cir.1973); Fed.R. Civ.P. 36, including that Dr. Jordan and Arthur Jordan had been represented by

Kelly removed the cases to federal district court on the basis of diversity of citizenship.

counsel during Dr. Kelly's testimony in family court, that one of Dr. Jordan's attorneys at the August 23, 1979, family court hearing had called Dr. Kelly to testify and had introduced into evidence Dr. Kelly's psychiatric evaluation report on the Jordan family, and that none of plaintiffs' attorneys had objected to Dr. Kelly's testimony based on any violation of the Act.[2]

■ Given that no genuine issues of material fact existed with regard to waiver, the district court correctly held that Dr. Mack and Dr. Kelly were entitled to judgment as a matter of law. A party who presents or fails to object to testimony of an allegedly privileged nature waives whatever privilege might have existed as to that testimony. *See McCormick's Handbook of the Law of Evidence* § 103, at 221–22 (E. Cleary ed. 2d ed. 1972); 8 Wigmore, *Evidence* § 2388, at 853–54 (McNaughton rev. 1961) (physician-patient privilege waived by failure to object).

The statute under which the Jordans sued does not provide an automatic, absolute bar to in-court testimony concerning health care information. Section 6(a)(1) of the Act sets out the general rule that confidential health care information shall not be subject to compulsory legal process in any type of legal proceeding. That section then provides that "a patient or his authorized representative *shall have the right* to refuse to disclose, and *to prevent a witness from disclosing,* his confidential health care information in any such proceedings". R.I.G.L. 5–37.3–6(a)(1) (emphasis added). The statute gives a patient the opportunity to prevent his physician from testifying, but does not entitle a patient to do what the Jordans have attempted here: to call physician as a witness or to cross-examine the physician without objecting to any of the physician's testimony, and then to bring a separate suit alleging that the physician violated a duty of confidentiality by testifying. In the family court proceedings, Dr. Jordan and

Arthur Jordan derived as much benefit as they could from the testimony of Dr. Mack and Dr. Kelly; then the Jordans turned 180 degrees and sued the doctors for testifying. As Chief Judge Boyle said at the hearing on defendants' motion for summary judgment, "[I]t's like being hit and held at the same time . . . . [H]ere the party who is suing them is the party who put them in that position to begin with." The unfair impact of permitting plaintiffs to maintain a suit against Dr. Mack and Dr. Kelly convinces us of the propriety of finding, again using Chief Judge Boyle's words, that plaintiffs' failure to object constituted "a classical waiver".

Plaintiffs cite two reasons why defendants are not entitled to summary judgment on the issue of waiver. First, plaintiffs claim that defendants did not establish waiver as an affirmative defense in their pleadings and, second, that waiver of any challenge to the defendants' in-court statements does not cover an out-of-court statement allegedly made by Dr. Kelly to another physician.

To answer plaintiffs' argument that the defendants did not establish waiver as an affirmative defense in their pleadings, *see* Fed.R.Civ.P. 8(c), we examine separately each of these three law suits prior to consolidation. In one suit, both Dr. Jordan and Arthur Jordan sued Dr. Mack for her alleged violation of the Act. Dr. Mack's motion to dismiss was still pending when the district court granted her motion for summary judgment. Thus, she was not required to and in fact never did file an answer to plaintiffs' complaint. *See* Fed.R. Civ.P. 12(a).

Dr. Mack properly asserted her defense of waiver for the first time in support of her motion for summary judgment. "It is fairly well settled that an affirmative defense may be asserted by a motion under Rule 56 *made prior to the answer* even though the

---

**2.** At the district court hearing on defendants' motion for summary judgment, counsel for plaintiffs expressly agreed with defendants' presentation of the facts, with one minor exception not relevant here. Although the parties did not include in the appellate record a transcript of the family court proceedings, plaintiffs' admissions establish the factual predicate of waiver without our having to peruse the family court transcript.

facts supporting the defense do not appear on the face of the complaint." 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil 2d* § 2734, at 426 (1983) (emphasis added) (footnote deleted); *see Chan Wing Cheung v. Hamilton,* 298 F.2d 459, 460 n. 1 (1st Cir.1962).

Plaintiffs cannot claim unfair surprise from Dr. Mack's assertion of waiver. Plaintiffs had ample time between the filing of defendants' summary judgment papers (which clearly asserted waiver) and the summary judgment hearing to rebut the waiver defense by presenting evidentiary material, including affidavits, to the court.

■ In addition, although the hearing transcript indicates that argument and decision of the summary judgment motion focused on the waiver issue, plaintiffs did not argue that Dr. Mack had improperly asserted the waiver defense. We may be forgiven for observing that plaintiffs thereby waived any argument that defendants waived their waiver defense. Plaintiffs may not on appeal raise for the first time a purported defect in defendants' pleadings. *See Eagle-Picher Industries v. Liberty Mutual Insurance Co.,* 682 F.2d 12, 22 n. 8 (1st Cir.1982) (absent exceptional circumstances, this court will not reverse district court on ground not urged upon or considered by district court), *cert. denied,* —— U.S. ——, 103 S.Ct. 1280, 75 L.Ed.2d 500 (1983).

Dr. Kelly also properly asserted the waiver defense. Plaintiffs brought two suits against Dr. Kelly—one by Dr. Jordan alone and one by Dr. Jordan and Arthur Jordan. Dr. Kelly answered both complaints and pleaded waiver as an affirmative defense in only one of the suits.

Following consolidation, the district court treated the two actions against Dr. Kelly as one. The plaintiffs in the two cases had an identity of interests and propounded essentially identical theories of liability. The Jordans never referred to the two actions as separate. *See In re Massachusetts Helicopter Airlines, Inc.,* 469 F.2d 439, 442 n. 3 (1st Cir.1972) (court may consolidate identical actions to form one new action where neither party would be prejudiced). More important, the Jordans did not argue to the district court that Dr. Kelly had not properly pleaded his affirmative defense of waiver. *See Eagle-Picher Industries,* 682 F.2d at 22 n. 8.[3]

■ Plaintiffs' second claim that waiver does not dispose of their case concerns certain alleged out-of-court statements by Dr. Kelly to a Dr. Very. This argument might have some strength if plaintiffs had presented this theory of liability to the district court. However, the transcript of the hearing on the motion for summary judgment indicates that plaintiffs presented Dr. Very's affidavit only to challenge the veracity of Dr. Kelly's assertions regarding alleged child abuse by Dr. Jordan. Plaintiffs never suggested to the district court that the alleged conversations could form a separate basis for violation of the Act. Plaintiffs cannot assert that theory of liability here for the first time. *See Eagle-Picher Industries,* 682 F.2d at 22 n. 8.

*Appellants' contentions have such a lack of merit that, under Fed.R.App.P. 38, we award to appellees double costs on appeal and attorneys' fees for work performed on the appeal.*

---

**3.** Plaintiffs cannot prevail on the authority of *Baker v. Chicago, Fire & Burglary Detection, Inc.,* 489 F.2d 953 (7th Cir.1973). First, in *Baker,* the defendant had actually filed an answer and had failed to plead therein the affirmative defense on which the district court granted summary judgment. Second, the plaintiff brought this procedural irregularity to the district court's attention. And third, the *Baker* court held that because the plaintiff had not been unfairly disadvantaged by the defendant's failure to plead the defense in its answer, the court did not reverse the lower court on that ground alone.